THE STATE OF KANSAS V. SAMUEL F. NEWMAN.

No. 10653.

1. DEFENSE OF INSANITY — *state of mind shortly before and after homicide may be shown.* Where the defense of insanity is interposed in a prosecution for murder, the important question is the mental capacity or incapacity of the defendant at the time of the homicide; but testimony as to his state of mind shortly before and after the homicide may be received as tending to show his mental condition at the time of the homicide.

2. ————— *court's duty to instruct as to, if testimony tends to prove.* Where testimony is received tending to show that the defendant was mentally incapable of committing a crime, it is the duty of the court to charge the jury upon the law applicable to that defense.

3. ————— *though testimony weak compared with that tending to prove sanity.* Although the testimony may be weak as compared with other testimony tending to show sanity, the duty of weighing the same is for the determination of the jury; and, in such case, a refusal to submit the question to the jury with proper instructions as to the law governing it is error.

*Appeal from Jackson District Court.*
*Hon. Louis A. Myers, Judge.*

REVERSED AND REMANDED.     OPINION FILED FEBRUARY 6, 1897.

Samuel F. Newman was charged with the murder of Charles Hoover on the evening of October 17, 1895. At the trial he was found guilty of manslaughter in the second degree, and the punishment adjudged was imprisonment at hard labor for a term of three years. The following is a summary of the evidence as shown by the record:

"The testimony tended to show and prove that Charles Hoover, an unmarried man, of about 30 years of age, on the evening of October 17, 1895, went in a buggy drawn by one horse from his home in Holton to the house of defendant, Samuel F. Newman, situated on a farm about seven miles from Holton; that at the home of the defendant, on that evening, was

45—57 KAN.

the wife of the defendant and his three little children; that the neighbors of defendant were notified by the brother of defendant, one James Newman, that Charles Hoover had been shot and killed by the defendant in this action; that the neighbors got to the home of the defendant between one and two o'clock of the morning of October 18, 1895, and found Charles Hoover dead in the yard, his body lying on its face, his head being about 12 feet east of the porch and his feet lying the length of his body nearer the porch. In three places about the same distance from the porch there were pools of blood. A bullet, shot from a Winchester rifle, had entered his head at the back and come out in the forehead over his left eye, and of this wound he died. The body was quite cold when first found by the neighbors. The place where he was found was in the County of Jackson, in the State of Kansas. The window curtains were drawn down. The door of the kitchen had the appearance of being bursted in from the outside; two pistol shots were fired into the west wall from the east, or from the direction of the east kitchen door, which had been broken open. There was an appearance of a scuffle having taken place in the kitchen near the east door. On the wooden ceiling of the kitchen were marks of some sort of a pistol or gun barrel having been scraped along the ceiling in two places having the appearance of there having been a struggle to obtain it. On the dead body of Hoover were found two letters from the wife of the defendant to Hoover, one inviting him to meet her in Holton on the night of October 16, 1895, and the other, upbraiding him for not meeting her as requested in the preceding letter and inviting him to come out to her home on the evening of October 17, 1895, as her husband would be gone from home to Dennison. It was admitted that Hoover went to the home of the defendant for the purpose of having sexual intercourse with the wife of the defendant. Hoover was found unarmed, with the exception of a small rock in his coat pocket. He was fully dressed. There was no bed in the kitchen where the shots were

fired.    The defendant was found by the neighbors on the kitchen floor, lying on his back, moaning and apparently in great agony.    The body of Hoover showed a cut on the forehead and a bruise or two on the head and a cut in his hat.    The inside of his hat which was found in the kitchen was stained with blood. There was blood on the west door-casing about 5 feet 8 inches from the floor.    The top hinge was bloody and bent.    A Winchester rifle, the property of James Newman, brother of defendant, and a pistol, bent and partly broken, which defendant had bought on October 15, 1895, were found in the kitchen.    James Newman lived about half-mile north of defendant, on the same farm.    He had, that afternoon, taken his wife to Holton and left her for the night; that, as late as 8 p. m. of October 17, 1895, the defendant and James Newman were seen in Circleville, about four miles from defendant's home.    They stopped at James Newman's house and took with them on defendant's return home that night his Winchester gun.    It was testified to that defendant had said that Hoover did not fight him back ; that he had shot Hoover with a Winchester rifle while Hoover was running away.    It is also shown that no evidence of cuts or bruises were found on the person of defendant.    The defendant put upon the stand witnesses who testified as to his good character, and one witness, Alexander Newman, testified that the defendant was found by him at about one o'clock of the morning after the killing in a dazed condition as if he did not know what he was doing ; and also one witness, John Hicks, testified that Hoover tried to borrow a revolver of him on the afternoon of the homicide.''

The defendant complains of the rulings made on the trial, and brings the case here for review.

*F. B. Dawes*, Attorney General, and *A. E. Crane*, County Attorney, for the State ; *Keeler, Welch & Hite*, of counsel.

*David Overmyer*, and *Waters & Waters*, for appellant.

JOHNSTON, J.   The most important exception urged by the appellant for reversal was taken upon the refusal of the Court to charge the jury upon the defense of insanity.   Testimony tending to show mental derangement and incapacity was offered and received, but the Court, though requested to do so, declined to submit the question or take the opinion of the jury thereon.   It appears that soon after the tragedy Newman was found lying on his back, moaning, and apparently in great agony ; and there was also testimony that he was in a dazed condition, as if he did not know what he was doing.   The shocking discovery of an adulterer in the house with his wife, the mother of his three children, would naturally cause tremendous excitement and mental disturbance.   Hoover had gone into the home of Newman for the purpose of having sexual intercourse with his wife, but what their situation was when found, or whether taken in the act of adultery, does not appear.   Knowledge of his wife's shame, or even the discovery of his wife in the lustful embrace of Hoover, afforded Newman no excuse or justification for killing Hoover.   Such a discovery, as the Court properly advised the jury, might be considered by them in determining the degree of the offense of which the defendant was guilty, if guilty of any, but could not of itself justify or excuse the killing of the deceased.   However, the shock and mental disturbance, necessarily caused by such discovery, might be considered in connection with the testimony that Newman was dazed and appeared not to know what he was doing.   It is argued that preparation for the difficulty, and the recollection of the occurrences by Newman, are inconsistent with the idea of actual insanity.   It is true that the testimony of men-

tal incapacity is not strong, and possibly the jury might have readily concluded that it was insufficient to relieve Newman of responsibility for the homicide. The testimony upon this question related to his con-, duct after the homicide; and, of course, it is without effect unless it appears that insanity ex-

1. State of mind shortly before and after homicide may be shown.

isted at the time the alleged offense was committed. In such case, however, the acts and conduct of the defendant shortly before or after the homicide may be shown in order to determine his mental condition at the time. The testimony was received by the Court; and whether it was strong or weak, whether it was sufficient or insufficient to show insanity, were questions for the determination of the jury. In such cases, testimony of claimed mental disorder should be carefully scrutinized and weighed; but the province of estimating the weight of the testimony belongs to the jury rather than to the Court.

In denying the defendant's request for an instruction, which appears to have been drawn in proper form, the Court undertook to estimate the weight of

2, 3. Court's duty to instruct as to defense of insanity, when.

the testimony, and clearly trenched upon the functions of the jury. The testimony does not reveal the details of the homicide, but there is abundant evidence of a terrible struggle in and about the house. The door had been broken open, the ceiling of the kitchen had been scraped by a gun or pistol barrel, two shots had been fired into the walls, blood was found in several places as well as upon the door-casing, and the hinge of the door was bloody and bent. Who began the struggle, who was the aggressor in the fight, or what occurred immediately prior to the killing of Hoover, can only

be surmised. The testimony is very meager, and unsatisfactory in some respects, but, in view of the statements alleged to have been made by the defendant, we regard it to have been sufficient to take the case to the jury. The claim that the verdict is without support cannot be sustained. The testimony was largely circumstantial, however, and it was therefore vitally important to the defendant that the jury should be fully and fairly charged upon all the issues in the case.

A number of other exceptions were taken to the rulings upon the instructions, but, except the omission of an instruction upon the subject of insanity, we discover no cause for complaint. In every other respect the charge appears to cover the testimony in the case and to fairly present the law applicable to the facts upon which proof was offered.

For the error mentioned, the judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.