C. A. MARSHALL V. TERRITORY.

No. 2219, Okla. T.   Opinion Filed March 29, 1909.

(101 Pac. 139.)

1.   INSANITY—Insanity After Indictment—Proceedings to Determine.   After a person is indicted, present sanity of such defendant is presumed to exist until it is called in question from a reputable source, on a sufficient and specific declaration to the contrary, or from observation by the court the defendant's present condition is such as to call in question his sanity whereupon it becomes the duty of the court to impanel a jury to pass on the sanity of the defendant; and the jury, and not the court, should determine this question.

2.   SAME.   The inquiry to be submitted to a jury, in a proceeding under section 5661, Wilson's Rev. & Ann. St. Okla. 1903, is: Whether the accused is mentally competent to make a rational defense, and it is not whether he is able to distinguish between right and wrong.

3.   SAME.   It is immaterial how or in what manner the question of present sanity is presented to the court pending trial of a defendant under indictment, whether it is by application for a continuance, motion for new trial, motion in arrest of judgment, by ex parte affidavit, or declaration of bystanders, or the court of its own motion.   All that is required is that the court shall make a record that a doubt arises as to the sanity of the defendant, whereupon an order for impaneling a jury to determine the issue is imperative.

4.   SAME—Doubt as to Sanity—When Exists.   If there exists in the mind of the court a doubt as to the sanity of the defendant, as

expressed in the statute, means if the court has been advised from a reputable source—that is, if a statement is made to the court by credible person, or persons, under oath that the defendant is insane—a doubt is raised. While there is a judicial discretion left to the court to determine whether there exists in the mind of the court a doubt, nevertheless such discretion should not be arbitrarily exercised, and its positive declaration and statement, as above indicated, that the defendant is insane necessarily presents a condition calling for investigation. The court may look to the source of information, the motive, opportunity, etc., of the party making it, but if the court denies the inquiry by a jury, it must do so under circumstances excluding all doubt of the truthfulness of the declaration that the defendant is insane.

5.  RAPE—Presumptions and Burden of Proof—"Chaste Female"— "Virtuous Female." Where a defendant is upon trial on the charge of having sexual intercourse with a female, not the wife of the defendant, who is over the age of 16 and under the age of 18, and of previous chaste and virtuous character, the burden is upon the prosecution to prove: First, that the act of sexual intercourse was accomplished by the defendant either with or without the consent of the female; second, that the female was over the age of 16 years and under the age of 18 at the time the act of such sexual intercourse was accomplished; third, that the female was of previous chaste and virtuous character. A "chaste female" is one that has never had sexual intercourse—who yet retains her virginity. This condition should exist. A "virtuous female" is one who has not committed an act of sexual intercourse unlawfully—out of wedlock, and voluntarily.

6.  SAME—"Chaste Character"—Definition. The "character" of the female mentioned in the statute is that condition actually existing, contradistinguished from a character by reputation. Was the female in fact chaste and virtuous? There is no presumption in law that she was so chaste and virtuous arising in favor of the state, because in the plain language of the statute, unless she is of such previous chaste and virtuous character, the offense has not been committed, therefore the indictment must allege, and the prosecution must prove, such character beyond a reasonable doubt; it being a necessary element of the offense.

7  SAME. The character of the female that is put in issue is not that character that she holds by reason of general reputation. The female's actual chaste and virtuous state or condition is her shield and protection, and this should be so because she may be falsely accused, as many men and women are in this day. That a false accusation should license the libertine to take advantage of a chaste and virtuous female would be revolting. Such a law would fall short of being righteous and just, and

put womankind at the mercy of the scandal mongers and character assassins.

8.    SAME—Instructions—Necessity. In a trial of rape such as is under consideration in this case, the court should instruct the jury directly and specifically what, under the law, constitutes a previous chaste and virtuous character of the female under consideration, and thereupon submit the facts for the determination of the jury as to whether the actual character required did exist previous to and at the time of the act complained of.

9.    SAME—Circumstantial Evidence. The issue being the chastity and virtuous character of the prosecutrix at the time of the commission of the alleged offense, such issue may be supported by circumstantial evidence, as in any other case of a similar nature. The defendant also has the right to attack this character by any facts or circumstances which would indicate a want of chastity or virtue upon the part of the prosecutrix.

(Syllabus by the Court.)

*Appeal from District Court, Noble County.*

C. A. Marshall was convicted of rape of a female under 18 and over 16, of previous chaste and virtuous character, and he appeals. Reversed and remanded.

March 7, 1906, plaintiff in error was indicted by a grand jury of Noble county in the then territory of Oklahoma, for the crime of rape by having sexual intercourse with Miss Leota Barnard, she being at the time a female under the age of 18 years and over the age of 16 years, and of previous chaste and virtuous character. The act complained of is alleged to have been committed November 10, 1904, in Noble county. On January 2, 1907. upon a trial before a jury, defendant was convicted of the charge of rape, and sentenced to serve a term of 7 years in the penitentiary. The defendant duly excepted, and appealed the case, and the same is now before us for review. Associate Judge of this court, Hon. Thos. H. Doyle, having been of counsel in this case, and being thereby disqualified as one of the judges of this court to hear and determine same, this fact having been duly certified to Governor Haskell, he thereupon appointed Hon. Marshall Fulton special judge of the Criminal Court of Appeals for the trial and determi-

nation of this cause. Mr. Fulton having duly qualified as special judge, the case was submitted to this court upon the briefs of both parties.

Doyle & Cress, for appellant.
Charles West, Atty. Gen., for appellee.
No briefs reached the reporter.

FULTON, SPECIAL JUDGE. (after stating the facts as above). The statute under which this prosecution is had is as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: First, where the female is under the age of sixteen years. Second, where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character."

There are fourteen assignments of error. The twelfth, thirteenth, and fourteenth of the errors assigned are to the effect and in substance: "Errors of law by the trial court in refusing to impanel a jury to determine the mental condition of plaintiff in error."

The statutes applicable to the points raised are St. Okla. 1893, p. 997, c. 68, art. 19, §§ 1-3 (Wilson's Rev. & Ann. St. 1903, §§ 5660, 5661, and 5662):

"Section 1. An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried or adjudged to punishment, or punished for a public offense, while he is insane."

"Section. 2. When an indictment is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned, and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

"Sec. 3. The trial of the indictment or the pronouncing the judgment, as the case may be, must be suspended until the question of insanity is determined by the verdict of the jury."

The remaining part of this article provides for the method

of procedure on the issues raised on the question of the insanity of the accused. The proceedings that were had on the subject were:

In the motion by defendant to arrest the judgment, being the fifth paragraph of that motion, wherein it is alleged "that the defendant at the time was an insane person; was such at and prior to his trial"—in support of this motion, is an affidavit by P. W. Cress, who appears to be one of the attorneys representing the defendant, a member of the bar of Noble county, and of the court where the case was tried, wherein it is set forth that, in the opinion of the affiant, the defendant was an insane person, setting out in detail several matters of fact upon which the affiant bases his opinion or belief that defendant was then insane. Thereupon, on the same day, and at the same time, the court made an order overruling motion for new trial, and also motion in arrest of judgment. Whereupon the court made inquiry, apparently directed to counsel for defendant, whether they had anything to say why judgment should not be pronounced against defendant. Counsel for defendant answered, "Yes," and stated they objected to the passing of sentence on defendant on the ground that "We believe he is an insane person," and offered in support affidavits already filed, and asked the court to fix a time for a further hearing, and taking of evidence as to the mental condition of the defendant. Whereupon the court set the hearing of the application as to whether or not the defendant was insane for Thursday morning following, and withheld sentence. Counsel for defendant suggested they wanted to offer evidence to the court; and, if the court deemed it not sufficient to put him upon trial, they thought they would be satisfied with the adjudication by the court upon the matter, whereupon the court announced he would hear the matter, and for both parties to have their witnesses on Thursday morning. Whereupon the court ordered that the matter of the motion for new trial and motion to arrest judgment stand, and that the order overruling them would not be made at this time.

Afterwards, on the day set apart for the presentation of tes-

timony on the question of insanity of the defendant, Dr. Paul R. Brown, a witness for defendant, was produced, who, among other things, testified as follows: That he was a physician; resided at Tulsa; graduated at the University of Maryland, and had taken a post graduate course at Cornell, N. Y.; had been acquainted with the defendant for two years and more; had had occasion to observe his conduct, speech, and actions as to his mental condition; had examined the defendant specially, and upon question direct to the point witness states that "the man [the defendant] in my opinion is insane"; says that he noticed the defendant was not right more than a year ago, and gave instances that he recalled of the acts and conduct of defendant, showing symptoms of acts indicating mental aberration.

Dr. T. F. Dailey, witness introduced by defendant, testified that he was a physician; resided at Tulsa; practiced about 8 years; was acquainted with the defendant for about one year; had known him at Tulsa; had made an examination of him on the day before he testified, and from his knowledge from former acquaintance, and his examination here, he stated that the man was not right in his mind at all, and had been in that condition ever since witness knew him; that he was suffering from delusions and hullucinations, supposing the existence of facts that in fact did not exist and were out of reason. This witness also gave detailed statements of incidents and facts upon which he bases, in part, his opinion.

Lawrence L. Cowley, introduced as a witness for the defendant, lives at Perry, Okla.; was acquainted with the defendant; met him several times; had been acquainted with him for some time. This witness testified that from certain acts and conduct related by defendant witness is of opinion that the defendant is a little bit off.

Harry Knowles, witness introduced by defendant, states he was an inmate of the jail with the defendant at the time of the examination; was there when he was first placed in jail. This witness goes on in detail, gives acts and conduct, etc., and, when he was asked how he acted, stated he did not know how he acted

exactly; he was just crazy was all he could say, and told of defendant tearing off his shirt, whooping and hollowing; stated that defendant went to bed singing, got up singing, and sang during the night, sometimes appeared rational, and insane at times.

J. E. Dolezal, county clerk of Noble county, a witness called for defendant, states: Was acquainted with defendant, knew him about four or five years; have had occasion to observe his mental condition, and he stated that he always considered defendant was unbalanced; he did not appear insane, but he was not right. At times in conversation he would fly off at anything we were talking about; says that the condition of defendant is such that he does not believe him able to distinguish right from wrong. Witness goes on and details acts and conduct.

Thomas H. Doyle, one of the witnesses, and counsel for defendant, states that he has known defendant for four or five years, five or six, maybe; knew him at Perry and Tulsa. Witness details a great many occurrences, such as writing letters containing 100 and 200 pages at a time, and giving many detailed instances of queer and unusual conduct on the part of defendant, uncalled for, and identification and introduction of letters written by defendant in November, 1906, the contents of which are incoherent, wandering, and flighty.

Dr. W. C. Marshall, witness for defendant, states he is a brother of the defendant; lives at Chelsea, Ind. T. He gave a short history of defendant; that he was a graduate of Chicago School of Dental Surgery; put in about two years at Rush Medical College at Chicago; set out that the defendant was well educated, and was quite a musician; when the defendant came out of school, there was something wrong; he was flighty; he suffered as a child from violent headaches and earaches, and gives from his personal knowledge and profession opinion that the defendant was not right in his mind.

Dr. J. A. Webber, witness for the territory, states he is a physician; resides at Perry; was acquainted with the defendant; made examination of defendant, and when asked as to his condition as

to whether he was a man of sound or unsound mind, stated, "Well, I thought he was peculiar"; said that he thought he was able to distinguish right from wrong, but would not state upon inquiry as to his opinion of his mental condition on this point. Witness said: "I would not be able to form any conclusion, I have seen so little of him." On examination by the court the witness stated, "While I knew him, I always thought he was a little wrong."

Dr. Keeler, witness for the territory, states he is a practicing physician at Perry; was acquainted with defendant for about two years. Witness states that the defendant was talkative; had an exalted opinion of his attainments, and liked to talk about them. His conduct, however, appeared perfectly rational. Witness states of the defendant:

"I did not observe anything that would lead me to believe that he had been any more sane than he was at that time, the time I examined him, but I just concluded in my own mind—1 never mentioned it—but I just supposed that he was rather of a—that his mind was on a comparatively low intellectual plane."

Thereupon this proceeding came to an end, by order of the court. The court speaks: "The motion in arrest of judgment, and the motion for new trial, and each of them, are overruled, and the objection to pronouncing judgment and sentence at this time are overruled," to which ruling of the court defendant excepts. Thereupon the court pronounces sentence. Record, page 220. It is to be observed that there was no jury called to pass on the question of the insanity or mental condition of the defendant after verdict; that in fact the mental condition was not suggested to the court until after verdict.

The statute above referred to (section 2) expressly provides:

"Where an indictment is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled," etc.

In the case at bar the court evidently fortified itself with the proposition that there was no doubt arising as to the sanity of the defendant. The character of the insanity that was inquired into

was as to the ability of the defendant at the time to distinguish right from wrong; that he had a mind sufficient to comprehend the nature and consequence of his act, in both of which propositions the court was in error.

First. There was sufficient testimony to authorize and require a hearing on the question of insanity by a jury. A person is presumed to be sane in ordinary affairs. After indictment the presumption of sanity continues until it is called in question from a reputable source and a sufficient specific declaration to the contrary. This was abundantly done under the testimony in this case. Whereupon it became the duty of the court under the law to impanel a jury to pass upon the sanity of the defendant. The jury, and not the court, should determine the question.

Second. The court in its examination was seeking to ascertain the defendant's condition of mind relative to his ability to distinguish between right and wrong, and his ability to comprehend the nature and consequence of his act. This is not the question that is presented under a proceeding of this character. The proper question is whether the accused is mentally competent to make a rational defense, and it is not whether he is able to distinguish between right and wrong. This rule has been enunciated in the following cases:

"When an affidavit is made by a respectable person that a defendant charged with crime has become insane, a jury should be impaneled to try the issue of insanity before proceeding with the case, and this, though the party making the affidavit is unknown to those in attendance on court. * * * The question to be determined on the plea of present insanity is, Is the accused mentally competent to make a rational defense?" (*Guagando v. State*, 41 Tex. 626.)

Under the California Code, practically the same as our own, the Supreme Court of the state has held:

"No plea of present insanity is required. If at any time during the proceedings in a criminal trial a doubt arises as to the sanity of the defendant, it is the duty of the court of its own motion to suspend further proceedings in the case until the question of

sanity has been determined. * * * Counsel for defendant cannot waive an inquiry as to the question of the sanity of a defendant." (*People v. Ah Ying,* 42 Cal. 18.)

"Under the Penal Code, though a person adjudged to punishment cannot be punished for a public offense while insane, his conviction of an offense does not exclude him from the asylum." (*People v. Schmidt,* 106 Cal. 48, 39 Pac. 204.)

"If there exists in the mind of the court a doubt as to the sanity of the defendant, and this doubt arises at any time during the trial, it is the duty of the court to stop the trial, and have determined the sanity of the defendant before further proceeding." (*People v. Lee Fook,* 85 Cal. 301, 24 Pac. 654.)

In this case, in determining the question to be inquired into, the court says:

"The question, however, is not whether he has become sane in every sense of the word, but whether he has become sane in the sense of the statute which requires the suspending of the proceedings in a criminal case whenever it is found that the defendant is presently insane."

In other words, if there is a difference between the medical view of insanity and the view upon which the statute is founded, the question of sanity or insanity is to be determined with reference to the latter as contradistinguished to the former view. The case further holds:

"That all books, treaties, and decisions on the subject show that the true and only reason why an insane person should not be tried is that he is disabled by the act of God to make a just defense if he has one. * * * If, therefore, a person arraigned for a crime is capable of understanding the nature and object of the proceeding against him, if he rightfully comprehends his own conduct in reference to such proceeding, and can conduct his defense in a rational manner, he is, for all purposes of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound."

On the same subject, and to the same effect, is the case of *Freeman v. People,* 4 Denio (N. Y.) 9, 47 Am. Dec. 216. And also the case of *Youtsey v. United States,* 97 Fed. 937, 38 C. C. A. 562, holds as follows:

2 Cr.—10

"The question whether a defendant charged with a criminal offense is in a fit condition mentally to be placed on trial may be raised at any time and in any appropriate manner, and the fact that the objection was taken in an application for continuance, which is also based on other grounds, does not relieve the court of the duty to give the question of his mental soundness due consideration. and try it in some appropriate form or proceeding; * * * that if it appear after arraignment, and before trial, that the prisoner is probably not capable of making a rational defense, the proceedings should stop until the sanity of the prisoner is determined or restored."

Again, in the same case, the court holds:

"Assuming, as we shall, that no duty rested upon the court to impanel a jury (court must impanel a jury in this state) to inquire whether the accused was in truth incapable of understanding the proceedings, and intelligently advising with his counsel as to his defense, and that it was optional with the court to call a jury, or resort to any other special mode of aiding his judgment, it was nevertheless his duty to consider and determine the matter judicially."

Under our law, if a doubt arises as to the sanity of the defendant, the court must order a jury, and if the facts presented to the court are such as to raise a doubt as to the sanity—that is, if there are statements under oath of a credible person, or persons, that the defendant is insane—a doubt is raised, because if the statements are true, the man is insane, and a jury must inquire into the facts as to the truthfulness of the alleged fact of insanity. It is to be observed that it is not a discretion on the part of the court, under our statute, to direct the calling of a jury. The only contingency is, Does a doubt arise? This means, has information come to the court through a proper channel, from a proper source or party—that is, during trial—and from a credible and trustworthy source information is brought to the court that the defendant is insane, or if from personal inspection or observation of the court such probable condition of the defendant is made known to the court, then the law requires that a jury should be impaneled, who shall inquire into the mental condition of the defendant. In this case there is small doubt, if any, that if the facts as pre-

sented in this record were presented to a jury, such jury would have found the defendant insane. To say the least, the testimony established that the defendant was not in such condition mentally as to be competent to make a rational defense.

There is another proposition, raised in the assignment of errors in the proceeding of the trial of this case, which relates to the question of the burden of proof, whether in the case at bar the territory was required to put proof before the jury that the female was of previous chaste and virtuous character. The law, upon the one hand, presumes the defendant innocent until guilt is established by evidence to that degree of certainty reaching beyond a reasonable doubt. On the other hand, the law presumes that every female is chaste and virtuous until the contrary is established, or there is evidence sufficient to create a reasonable doubt upon this issue. There are cases and authorities holding, on each side of the proposition, that in such cases the presumption of chastity prevails over the presumption of innocence. From an examination of the cases the true rule will be found to be the cases where the law presumes the female is of chaste and virtuous character are those that refer to general reputation and general repute of such female; how she is held in the community where she resides. In such cases the chastity of the female is not an element of the crime investigated. Wherever character is an element of the crime —that is, where the statutory definition of the crime involves chastity, wherein the act constituting the offense must have been concerning a female having previous chaste and virtuous character—the law will not presume such character to exist. The burden is upon the state to establish, beyond a reasonable doubt, each material allegation in the indictment, and each material element of the crime charged, one of which is that the female was of previous chaste and virtuous character. To hold otherwise would be to hold that the defendant should prove his innocence.

A chaste female is one that has never had sexual intercourse— who yet retains her virginity. A virtuous female is one who has

not had sexual intercourse unlawfully—out of wedlock, knowingly and voluntarily. First. Take the rule applicable to insanity. One indicted for crime is presumed to be sane, in the absence of testimony to the contrary. But if evidence is presented which proves, or tends to prove, that the defendant was insane, then the burden is upon the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the offense. Where the question of the insanity of the defendant, at the time of the commission of the act, is raised in a case, the rule announced in the case of *Davis v. United States*, 160 U. S. 469, 16 Sup. Ct. 353, 40 L. Ed. 499, is as follows:

"The presumption of law that every one is sane merely authorizes the jury to assume at the outset that the accused is criminally responsible for his act, and the defendant is entitled to acquittal if upon all the evidence there is reasonable doubt that he was capable in law of committing the crime."

The trial court fell short of giving the defendant in this case the full benefit of the above rule, even if chastity of the female was not an element of the crime charged. The rule announced in the Davis Case above set out is in our judgment the proper rule of law to be adopted in cases applicable, not only for the reasons and purposes announced in the case, but because it more nearly coincides and catches onto the human heart and human conscience; gets nearer the right of the matter.

On the question of previous chaste and virtuous character, in one sense "character" is what a person really is; it is that real condition that constitutes character. In another sense "character," such as is capable of being measured and determined from reputation, is that which a person is supposed or is estimated to be. 5th Am. & Eng. Enc. of Law (2d. Ed.) p. 852, and cases cited. In cases of seduction, the previous chaste character of the woman seduced is one of the essential elements of the offense. Under statutes like our own, it has been held to require the injured female should be actually chaste, and not merely have a good reputation in that respect. This should be so because it is a protection and

shield to the pure and virtuous woman. She may be falsely accused, as many men and women are in this day. That a false accusation should license the libertine to take advantage of a chaste female would be revolting; such law ·would fall short of being righteous and just. The law does not uphold the work of the scandal monger, or character assassin. · The following cases uphold this conclusion:

"One of the essential elements of the crime in this class is that the female assaulted must have been of previous chaste and virtuous character. This law is for the protection of the girl of tender age and immature judgment who is pure, chaste, and virtuous. A male person who indulges in sexual intercourse with such female not his wife is classed by the law alongside of one who forcibly ravishes the female over 16 years of age. Elements of force, violence, or resistance do not enter into this particular class of rape." (*Young v. Territory,* 8 Okla. 525, 58 Pac. 724.)

"The statute provides that in the prosecution of the seduction of an unmarried woman like the present no conviction can be had if on the trial it is proved that such woman was at the time of the alleged offense unchaste. This means actually unchaste. * * * The female must not only be unmarried, but chaste in fact when seduced." (*Hussey v. State,* 86 Ala. 34, 5 South, 484; *Kenyon v. People,* 26 N. Y. 203, 84 Am. Dec. 177.)

Bishop, Statutory Crimes (2d Ed.) § 639, reads:

"The seventh and ninth charges requested by defendant were, under this principle, properly refused. The word 'character' used in this charge is ambiguous in meaning, and may be construed to refer to the reputation of the prosecutrix. It is therefore misleading inasmuch as evidence of bad reputation for chastity was inadmissible to prove a want of actual virtue." (Bishop, Statutory Crimes [2d Ed.] § 639.)

In the case of *Lyons v. State,* 52 Ind. 426, which was a prosecution for abduction of a female for the purpose of prostitution, under statutes making it an offense to so abduct a female of previous chaste character, the court said:

"On the trial the defendant proposed to prove acts of illicit sexual intercourse on the part of the prosecuting witness prior to the alleged abduction. The court rejected the evidence. We think

this was error. In such a case the female must be of previous chaste character. This has been held to mean that she shall possess actual personal virtue in distinction from a good reputation. A single act of illicit connection may therefore be shown on behalf of the defendant." °

In the case of *Smith v. Commonwealth*, 32 S. W. 137, 17 Ky. Law Rep. 541, the defendant was indicted and convicted of the crime of seduction under promise of marriage; the seduction being founded on the fact of the previous chaste character of the female. The court said:

"Without an extensive discussion of the testimony it is apparent that some instruction should have been given with reference to the character of the woman whose virtue is said to have been lost by the act of the defendant. If at the time of his promise of marriage she was a lewd woman, and shortly prior she had had sexual intercourse with others, this verdict should not stand, and instruction to that effect should have been given."

Under a statute providing for the punishment of the seduction of an unmarried woman of previous chaste character, the court held:

"That character referred to moral qualities, and not to reputation, and evidence of reputation was not admissible upon the issue of character, but only to impeach or corroborate testimony in regard to particular acts of unchastity." (*State v. Pizer*, 49 Iowa, 531 31 Am. Rep. 155.)

Under another statute, which provides "that any man who under promise of marriage seduces any unmarried female of previous chaste character, shall be guilty of a misdemeanor," it was said that:

"By the terms 'chaste character' the Legislature could only have meant personal qualities that make up the real character, and not public reputation, which is the estimate of character formed by the public. It could not have been intended to substitute reputation for character in this its primary and true sense." (*Kenyon v. People*, 26 N. Y. 203, 84 Am. Dec. 177.)

In the case of *Andre v. State*, 5 Iowa, 389, 68 Am. Dec. 708. the court held as follows:

"Character in seduction statutes prescribing that the woman

be of previous chaste character, such statute is for the protection of the pure-minded, for the innocent in heart, who. may have been lead astray, seduced from the paths of rectitude; and the jury are the sole judges in a case which comes within this description. * * * Character signifies that which a person really is, in distinction from that which she may be reputed to be."

In *State v. Southerland,* 30 Iowa, 571, it was said:

"In order to determine the character of the female for chastity it is proper to extend the inquiry, not only to the fact whether she has had previous sexual intercourse, but whether she is pure and chaste in character in her acts and habits of life."

From the foregoing authorities it is apparent that it is not the general reputation of the female that she is chaste and virtuous that is taken as the standard character. On the contrary, it is a condition actually existing that she is in fact chaste and virtuous. If the law presumes that the female is chaste and virtuous, this presumption merely authorizes the jury to assume at the outset that she was of such character. That the female was of a previous chaste and virtuous character is an issuable fact; and any evidence tending to overthrow the presumption of chastity is admissible, not evidence of general reputation, but any evidence that tends to establish a condition, such as above described, that amounts to character. A situation, inclination, and opportunity to engage in illicit intercourse is pertinent and admissible. The state should be required to establish the required chaste and virtuous character. This may be done by satisfactorily explaining, in harmony with virtue and chastity, all apparent compromising circumstances or facts throwing suspicion on her actual character, as well in addition showing her general good reputation.

The defendant in this case put in evidence certain circumstances and facts showing, and tending to show, the visits, of the female to the sleeping room of a young man of her acquaintance with whom she was keeping company. These visits were frequent, and about nine months previous to the time of the birth of the child. Defendant also put in evidence that the female lost some of her clothing or wearing apparel during a buggy ride at night

with a young man, and proposed the introduction of other facts in this line, all of which was, as we see it under the law, pertinent and relevant, and was sufficient to require the territory to produce proof explanatory of such circumstances and facts to such an extent as to satisfy the jury beyond a reasonable doubt that the female was of this previous chaste and virtuous character at the time of her intercourse with the defendant.

The Attorney General has conscientiously confessed the error of the court relative to the proceedings on the question of insanity. The court adds a little to his·suggestion. On the question as to the condition of proof as to the chastity and virtuous character of the defendant we are of the opinion that under the testimony the jury should have been directly and specifically instructed what, under the law, constitutes a previous chaste and virtuous character of a female applicable to this case, and thereupon submit the facts for the determination of the jury as to whether the actual character required did exist previous to the act complained of. This the court failed to do.

In the case of *Bailey v. State,* 57 Neb. 706, 78 N. W. 284, 73 Am. St. Rep. 540, which was a prosecution for rape under the statute of Nebraska providing that, if a male person of the age of 18 years or upwards shall carnally know or abuse any female child under the age of 18 with her consent, unless such female child is over 15 years of age, and previously unchaste, he shall be deemed guilty of rape, the court held:

"The indictment may include all acts of unlawful sexual intercourse between the accused and the prosecutrix in the state after she became 15 years of age, which were not barred by the statute of limitations. * * * To sustain a conviction, it is not only necessary for the prosecution to show that the accused has violated the spirit of the statute, but it must also show beyond a reasonable doubt that he has offended against the letter of the law. * * * If any male person of the age of 18 years or upwards carnally knows any female child under the age of 18 with her consent, unless such female child is over 15 years of age and previously unchaste, he shall be deemed guilty of rape, but an accused person cannot be convicted under evidence showing that the female, after she was

15 years of age, and previously to the act charged, had had illicit sexual intercourse for the first time with the accused in another state, * * * and such accused person cannot be convicted if the evidence shows an act of illicit sexual intercourse within the state, but barred by the statute of limitations."

The first and second assignments of error relate to the sufficiency of the indictment. We are of opinion that the indictment in the case is sufficient. It is as follows:

"In the District Court of Noble County, Oklahoma Territory. Territory of Oklahoma, Plaintiff, v. C. A. Marshall, Defendant. Indictment for rape. We, the grand jurors of the grand jury, duly and legally impaneled, sworn, and charged in the district court in and for the county of Noble and territory of Oklahoma, at the February term, 1906, do upon our oath present and find: That at and in the county of Noble and territory of Oklahoma, on the tenth (10th) day of November, 1904, C. A. Marshall, a person then and there being, did then and there knowingly, willfully, unlawfully, intentionally, and feloniously accomplish the act of sexual intercourse with and carnally know one Leota Barnard, she, the said Leota Barnard, being then and there a female under the age of 18 years, to wit, of the age of 16 years, and she, the said Leota Barnard, being then and there a female of previous chaste and virtuous character and she, the said Leota Barnard, not being then and there the wife of him, the said C. A. Marshall, the perpetrator thereof. Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the territory of Oklahoma. Chas. R. Bostick, County Attorney of Noble County, Okla. T."

The eighth and ninth assignments of error call in question the sufficiency of the evidence to sustain the verdict. In view of the fact that this case must be reversed upon other questions, we shall content ourselves with saying that the testimony of the prosecution is far from satisfactory. The record shows that during March, 1905, a complaint was filed against the defendant, charging him with the commission of this offense, that the prosecuting witness testified, upon the preliminary trial, that the defendant had sexual intercourse with her on or about the last of September, or the first of October, 1904, and that this was the only time that

she ever had sexual intercourse with any person. This matter was particularly inquired into, and the witness was positive upon that point. On the 13th of August, 1905, the prosecuting witness gave birth to a child. This was nearly 11 months after the date which the prosecuting witness positively testified to as the date of her sexual intercourse with defendant, and the only sexual intercourse she ever had with any other person. At the December term of the court, 1906, the defendant was placed on trial for the offense charged. The prosecuting witness then testified that she had sexual intercourse with the defendant in November, 1904. This change in her testimony as to dates is strongly suggestive of the idea that it was for the purpose of making the date of the intercourse harmonize with the date of the birth of the child. This inference is strengthened by the fact that the prosecuting witness admitted that she had threatened a prosecution for bastardy against a young man named Kehress. It is true that she stated that she only did this in fun. It is also a significant fact that the prosecuting witness admitted on cross-examination that on the 12th or 13th of November, 1904, just nine months before the birth of her child, she lost part of her clothing in Perry, while returning home from attending the opera house with a young man named Shep Wooley. It also appears from the record that during November, 1904, the prosecuting witness, in the day time, visited the sleeping apartments of one Lon Kehress, a young man who worked in a restaurant at nights, and slept in his room during the day. Being thus self-contradicted and self-impeached, we do not believe that a verdict should be allowed to stand upon her testimony, unless it is corroborated by other evidence coming from a trustworthy source. While rape is a most atrocious and revolting crime, and when clearly proven by credible evidence it cannot be too severely punished, yet it must also be remembered that it is a charge easy to be made and difficult to defend against, even though the accused may be innocent. Nothing is more highly calculated to excite the sympathies and arouse the passions of a jury than a charge of this

character. It is therefore the plain duty of the jury and the courts to guard against such consequences.

For these reasons we suggest to the county attorney of Noble county that, unless he can secure corroborating evidence of a credible character as to the material facts in this case, it will be a useless expense and waste of time to place the defendant again upon trial for this alleged offense. For the reasons hereinbefore given the case is reversed and remanded.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.