## J. H. LEE v. STATE.

No. A-4893.    Opinion Filed April 2, 1925.
(233 Pac. 654.)

(Syllabus.)

1. **Evidence—Eccentricities Alone not Evidence of Insanity.** Temperamental eccentricities of mind and conduct, alone, are not evidences of insanity.

2. **Same—Peculiarities of Conduct May be Symptoms of Insanity, if Due to Disease of Mind.** Idiosyncrasies, peculiarities, or unreasonable conduct may be symptoms of insanity, where these are due to some disease of mind, and where it is shown that at some prior period of the man's life he was not possessed of such traits.

3. **Same—For Trial Judge to Determine Whether Proffered Testimony Reasonably Justifies Inference of Insanity.** Where testimony tending to establish insanity is offered, the trial judge must determine, in the first instance, whether the proffered testimony reasonably justifies an inference of insanity.

4. **Same—Opinion Evidence on Insanity to Be Based on Facts Submitted.** Opinion evidence on insanity must be shown to be based upon facts submitted as a foundation for that opinion. Mere conclusions of a witness, based upon observation, without a showing of facts from which such conclusions may logically be drawn, are insufficient.

Appeal from District Court, Tulsa County; Preston S. Cole, Judge.

J. H. Lee was convicted of murder, and he appeals. Affirmed.

H. F. Fulling and A. L. Harbison, for plaintiff in error.

The Attorney General and Baxter Taylor, Asst. Atty. Gen., for the State.

BESSEY, P. J. The plaintiff in error, for convenience referred to as the defendant, was convicted of the murder of C. W. Young, with his punishment fixed at life imprisonment. The defendant and his victim were brothers-in-law, between whom there had been hostile feeling for a long time. The two men met, by chance, on the streets of Tulsa, where, according to the testimony of the state, the defendant, without any new provocation, deliberately fired the shot which caused the death of Young. The defendant's testimony tended to show that the deceased was the aggressor and that the defendant acted in self-defense. As an additional de-

fense there was an effort made to show that the defendant was of unsound mind at the time of the homicide.

The only claim of error urged in defendant's brief is that the court excluded and withdrew from the jury testimony offered in some instances and given in others, which testimony tended to show that the defendant at the time of the homicide was insane. No attempt was made to establish defendant's insanity by expert witneses, or those skilled as alienists, or persons trained and competent to diagnose or analyze disease of the mind.

A witness, Mr. Esley, said the defendant talked to him about building a cistern a short time before the homicide, and that at that time, as well as in earlier conversations, extending over a period of several years, defendant was prone to talk about his domestic troubles; that there did not seem to be anything particularly wrong with his appearance, except that he looked wan and tired, and that at times his conversations were more or less incoherent. Upon this statement of fact the court would not permit the witness to give his opinion as to the sanity of the defendant.

A witness, Seagrove, talked with the defendant for a period of five minutes about a month before the homicide. During this conversation the defendant seemed to be nervous, and talked about his family troubles. The witness had known the defendant some five years before the homicide, when he was a night watchman, and noticed that the defendant talked to himself frequently. The court refused to permit the witness to give his opinion as to the sanity of the defendant, based upon these facts.

John B. Means, a lawyer, testified that the defendant, about a year prior to the homicide, had been employed by him as a night watchman; that on different

occasions he talked about his family troubles; that he was rather nervous and excitable, and did not seem to be right in some respects. Upon this showing the witness was permitted to anwer: "I would say that he [the defendant] was of unsound mind"—at the time of the conversations had with defendant a year before.

R. E. Berger, a lawyer, said the defendant came to his office nearly every day for a week or more, a short time before the homicide, for the purpose of obtaining professional assistance in regard to a collection; that defendant appeared to be disturbed in mind, nervous, and excited, but rational. The witness had known the defendant long before this, and noticed that he had a wild stare in his eyes, and often appeared excited and talked a great deal, with constant repetitions, about his domestic troubles. The witness then stated that for the past four years he believed the defendant was irrational.

J. J. Moran, manager of a detective agency, testified that the defendant was of a nervous temperament, prone to talk about his family affairs; that these conversations took place some months prior to the homicide. In reply to a question witness said: "I would say that he was of unsound mind." On cross-examination the witness admitted that he had employed the defendant as a night watchman, and that as such he was authorized to and did carry firearms.

William O'Connor, another witness, stated that about one month previous to the homicide he talked with the defendant concerning the city officials, and that the defendant's conversation was disconnected and unreasonable—in a sense irrational.

Walter Large, the jailer in charge of the defendant, said that about three weeks after the defendant was

incarcerated in jail he noticed that the defendant would walk to and fro from one cell to another and try to shake the doors, and that he sometimes uttered a loud, moaning noise. The court refused to allow this witness to give an opinion touching the sanity of the defendant.

Another witness, O. L. Gent, a plasterer by trade, said that about 30 days before the homicide the defendant followed him about on the streets of Tulsa to tell the witness about his domestic troubles, and that he would repeat the same thing over and over; that defendant appeared nervous and his eyes did not look exactly right. The court refused to permit this witness to express an opinion as to the sanity of the defendant.

Before submitting the case to the jury the court instructed the jury not to consider any of the evidence relating to the question of insanity. It has been held that temperamental eccentricities of mind and conduct, alone, are not evidences of insanity. A man may do the most extraordinary things; he may recklessly squander his money; his conduct may be the subject of ridicule; he may be addicted to sudden bursts of passion and of harsh treatment towards those he should treat with tenderness; his deportment upon a particular occasion may be an outrage upon decency and propriety. All this, if it be the result of eccentricity of character, or of depraved taste, or an unfortunate temper, and does not proceed from a permanent disorganization of the mental faculties, will not support a plea of insanity. 16 Corpus Juris, 99, 100; 32 Corpus Juris, 597; Hopkins v. State, 4 Okla. Cr. 197, 108 P: 420, 111 P. 947.

The opinion of a nonexpert witness that a person is irrational, based on observations of this character, is a conclusion merely, not warranted by the facts. Most persons have some temperamental peculiarities of thought and action that to others seem queer. The term "irra-

tional" is an elastic term, one that may convey one idea to one person and an entirely different idea to another. "Irrational" may mean unreasonable, foolish, absurd, and a person in such sense may be irrational, and still not be, in any legal sense, insane. If it could be shown as a defense in every homicide case that the perpetrator at some period of his life acted queer, unreasonable, or absurd, that defense could be interposed and relied upon in all homicide cases. To establish a legal defense on the ground of insanity, there must be a showing that at the time of the commission of the deed the person accused was laboring under such a defect of reasoning, from some disease of the mind, as not to know the nature and quality of the act he was doing, or, if he did know, that he did not know that what he was doing was wrong. Notes and cases cited, 32 C. J., supra.

Idiosyncrasies, peculiarities, or unreasonable conduct may be a sympton of insanity, where these are due to some disease of the mind, and where it is shown that at some prior period of the man's life he was not so afflicted.

Where testimony tending to establish insanity is offered, the trial judge must determine in the first instance whether the proffered testimony reasonably justifies an inference of insanity. Turner v. Territory, 11 Okla. 660, 69 P. 804. It follows, therefore, that if such evidence has been admitted, and the facts so shown do not justify an inference of insanity, the court may withdraw the testimony from the consideration of the jury. If, however, the evidence in any slight degree tends to support the plea of insanity, it should be admitted. If there is any competent testimony tending to establish insanity, the weight of such testimony is for the jury. Turner v. Territory, supra; Marshall v. State, 2 Okla. Cr. 136, 101 P. 139.

Opinion evidence on insanity must be shown to be based upon facts submitted as a foundation for that opinion. Mere conclusions of the witness, based upon observation, without a showing of fact from which such conclusions may logically be drawn, are insufficient. That being true, it would seem that erroneous conclusions, not warranted by the facts, may be excluded. Queenan v. Territory, 11 Okla. 261, 71 P. 218, 61 L. R. A. 324.

From what has been said, we conclude that the trial court committed no error in refusing to permit the several witnesses to state their opinions as to the insanity of the defendant, based upon the facts shown, and committed no error in withdrawing from the jury the opinion expressed by other witnesses, based upon the facts shown.

The judgment of the trial court is affirmed.

DOYLE, J., concurs.

EDWARDS, J., absent and not participating.