William Ronald LAC COARCE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12410.

Criminal Court of Appeals of Oklahoma.

April 3, 1957.

Leonard C. Bowen, Court Pappe, Jr., Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The testimony as shown by the transcript in said cause reflects that on the 30th day of October, 1955 the defendant induced Glyna Ann Brockhaus, nine year old girl, to go down into a hole where a sewer line was being laid, by promising to give her $1. After the little girl had gone down into the hole with the defendant, he placed one hand upon her shoulder and put the other between her legs, then asked if she would like to make $100. The little girl's brother, who was seven years old, was told by the defendant to stand watch for him. The little girl became frightened and ran out from the hole, and told her brother Pat, age five, that the man was a mean man, at which time the brother Pat ran to his home, which was nearby, and told his mother and daddy.

Don Wayne Brockhaus, brother of Glyna, testified that he was seven years old and was in the first grade and attended Monroe School in Oklahoma City, and lived at 5213 Miller Street. Upon being asked if he understood the meaning of the oath he had taken in order to testify, he said: "That means you are telling God the whole truth and nothing but the truth". He testified that the defendant came along on a "bike" and told him to stand watch, and he did, but the defendant told his sister to go down into the hole and she did, and after that he came down in where his sister was and asked if she would like to have $100, and then she ran out of the hole and some boys came by and "she told us that the man was a robber". That the defendant asked the boys for some matches, and then went on up to the store.

Arthur John Brockhaus testified that he was the father of the little girl, and that he was working in the garage the day that his youngest son came to the garage. That he went across the road and saw a fellow by the name of Presser and they drove around the block looking for the defendant. That he found defendant, then called the police. The police arrived and took defendant into custody.

The day following his arrest defendant gave a statement to the officers admitting offering to give the little girl $1 to go down into the hole, which she did, and that he placed his hand between her legs.

The plaintiff in error recites six assignments of error.

After a careful study of the transcript and evidence presented therein, we feel that there is not sufficient merit in the first five contentions of the plaintiff in error to be discussed herein, and for that reason this opinion will deal exclusively with assignment of error number 6, and fundamental error reflected by the record.

It is contended by plaintiff in error in assignment number 6, which is as follows:

"Error of the court in refusing to allow defendant to introduce evidence concerning the sanity of defendant at the time of the alleged commission of said offense";

the trial judge committed error in not permitting witness O. A. Tate to testify as to the mental capacity of defendant at the time of the alleged commission of the offense, or as to whether he was mentally capable of determining right from wrong. In discussing this issue it is considered beneficial to briefly refer to the testimony of the defendant's witnesses in this regard.

The mother of the defendant, Mrs. Iva Perry, testified in substance that during defendant's childhood he sustained three very bad falls, two of which were from the loft of a barn, and that he later fell from the viaduct on Walnut Street, in Oklahoma City. That after these falls his back began to draw and defendant became indifferent in his ways of being quick to learn. That he was taken to University Hospital as a result of said falls, where he was kept for three months with weights, trying to straighten his back and adjust his vertebra, which was shown to be "crossed". That they were unable to help him very much. They said they could operate but could not guarantee cure on his spine. That defendant's back, prior to the falls, was perfectly straight. That defendant has lived with her all but five years of his life. That he knows little about reading and writing, and can write his name. That his main work was in ditches.

Levia Myers Smith testified in substance that she had been a resident of Oklahoma City for 25 or 30 years. That she had taught in the Oklahoma City school system, and was principal of the Irving School where defendant had attended when he was about eight years old. He was a student in her school for three and a half or four years. That she had occasion to observe him during that period of time. That when she first knew the defendant he was well adjusted socially and was pleasant. That defendant was brought to her attention because there came a stoppage in his progress. He forgot what he had learned, and his disposition changed. When she first

knew him, he initiated and participated in games with the other children. Later, he seemed to retard within himself. He was shy and did not play much with other children. He became a follower, and other children would lead him. This change came about after the injury sustained by defendant as a result of falls. The change was gradual—not over night. His back began to bend. That she had many talks about this with his parents. That it was quite noticeable then, but not as large as was apparent at the time of trial. That defendant developed an inferiority complex.

Mr. O. A. Tate testified in substance that he had been a resident of Oklahoma City for 37 years. That he was building superintendent of the Globe Life Insurance Building. That he was an uncle of the defendant, had known him since birth, and gave him a job for several months in 1953. That during the time defendant worked for him he would give defendant a job to do, and after a while he would wander off. If witness scolded defendant, it would hurt his feelings. That he would have to handle him easy and keep his mind employed because he would not stay with the job he was doing. That he would burn up good lumber. That he would play with tar, and on one occasion came near blowing up a man by not knowing what he was doing. That he did not act like he knew what he did. That witness had opportunity to observe defendant during and after employment. The witness was asked by the defense attorney if he could express an opinion as to the ability of the defendant to understand the difference between right and wrong. Objection was made by the State, and sustained by the trial judge on grounds calling for an opinion and conclusion. At this stage of the testimony, the court refused to permit witness to express his opinion as to whether or not defendant was able to distinguish right from wrong at the time of the alleged crime. Several efforts were made by defense attorneys to interrogate the witness relative to this matter. The court consistently sustained objections

thereto, at which time the attorneys for defendant dictated into the record the following statement, outside the hearing of the jury:

"Comes now the defendant, and offers to prove by the witness, O. A. Tate, that said witness has had opportunity to observe the defendant for the past three years, has personal knowledge touching upon the competency of the defendant and the ability and understanding of said defendant to ascertain right from wrong in his ordinary employment and business conduct, and based upon such experience that it is the opinion of the witness that the said defendant was incapable of ascertaining and distinguishing right from wrong in the commission of any acts, if any were committed which defendant specifically denies, alleged to have been committed on the 30th day of October, 1955."

The State objected to the offer of such proof. The court sustained said objection on the ground that Tate was a non-expert witness with reference to the mental condition of the defendant, and that the court was unable to find any evidence supplied by the witness which would be sufficient foundation upon which to express his opinion to the jury as to the lack of sanity of the defendant, and that the court was of the opinion, under the authorities, that before a non-expert witness can give his opinion to the jury as to the sanity of the accused, he must first give sufficient facts on which such an opinion may be based, and that the court was of the opinion that there had not been introduced in this case to this time sufficient facts to warrant such a non-expert opinion. This constitutes the grounds upon which plaintiff in error bases his assignment of error.

It is a well settled question of law in this State that non-expert witnesses, after having laid proper foundation, may express opinion as to mental capacity of defendant. The recognized rule in that regard is cited in the following cases: State v. Newman, 57 Kan. 705, 47 P. 881; Turner v. Terri-

tory, 11 Okl. 660, 69 P. 804; Queenan v. Territory, 11 Okl. 261, 71 P. 218, 61 L.R.A. 324; McNeill v. State, 18 Okl.Cr. 1, 192 P. 256; Lee v. State, 30 Okl.Cr. 14, 234 P. 654; Alexander v. State, 66 Okl.Cr. 219, 90 P.2d 949; Rice v. State, 80 Okl.Cr. 277, 158 P.2d 912, 917.

■ The rule is well expressed in Rice v. State, supra, where it was held:

"Where insanity is interposed as a defense, a non-expert witness, after testifying to the acts, conduct and appearance of the defendant, may state whether such acts, conduct, and appearance impressed him as being rational or irrational. That is, whether he was sane or insane."

■ This well established rule was not intended to deprive a trial judge of some degree of discretion in such cases. However, we feel it should be liberally construed in favor of the defendant when his defense is based upon the theory of insanity. In Turner v. Territory, supra, it was stated:

Where testimony tending to establish insanity is offered, the trial judge must determine in the first instance whether the proffered testimony reasonably justifies an inference of insanity.

This does not mean that it is within the province of the trial judge to determine the weight or sufficiency of said testimony, which we feel is the sole province of the jury, but it is within the province of the trial judge to ascertain if the facts taken to be true related by witness, would justify an inference of insanity.

■ It naturally follows, in view of this holding by the court, that a proper predicate must be laid for a non-expert witness to state his opinion. It was never intended that the witness would be permitted to make such an expression unless it was based upon more than mere conclusion, but he must relate in connection therewith certain facts, acts or conduct of the defendant that would produce upon him an impression justifying such an opinion. The rule as to this type of evidence is clearly set forth in Lee v. State, supra [30 Okl.Cr. 14, 234 P. 656], in the following language:

"Opinion evidence on insanity must be shown to be based upon facts submitted as a foundation for that opinion. Mere conclusions of the witness, based upon observation, without a showing of fact from which such conclusions may logically be drawn, are insufficient" and "may be excluded."

■ In applying these well recognized rules of law to the facts in the case under consideration, we are confronted with this question of law: Did the court err in refusing to permit witness Tate to give his opinion as to the mental capacity of defendant at the time of the alleged offense?

In order to decide this question, it naturally presents another. Did Mr. Tate state sufficient facts or circumstances upon which he could properly base his opinion? He testified he had known the defendant since the day he was born. Though the question was not propounded by defense attorney, nor did witness make mention of early childhood injury, it must be apparent from the two witnesses preceding him that he had full knowledge of the same. He testified that defendant worked for him. That he would wander off from the job; burn up good lumber; play with tar, and by so doing almost caused the death of a man; did not seem to know what he was doing. The description presented by witness Tate pictured defendant as one with the mind of a child. The testimony of Tate, when considered along with the other witnesses, is most convincing that the defendant's actions, conduct, and appearance were not in accord with that of a normal individual, and that his abnormality was a result of serious injury when a child approximately eight years of age, and that his condition developed over a period of time.

It is the opinion of this court that the testimony of the witness Tate related sufficient facts upon which to base an opinion as to the mental capacity of the defendant.

■ The court feels that if the testimony offered tends, in the least degree, to justify an inference of insanity, the prisoner should be given the benefit of the doubt in such case, and the weight of such opinion or expression be determined by the jury.

The court will not elaborate further on assignment number 6, for the reason it is more deeply concerned by a question raised in the mind of the court in reviewing the record in this case.

■ In the opening statement of the attorney for the defense, it is quite obvious and clear that he was relying solely upon the defense of insanity in that defendant, as a result of injuries sustained when a child, had become retarded to the extent that his mind was that of a child, and incapable of knowing or discerning right from wrong, at the time of the alleged commission of the offense.

■ In support of this theory of defense, three witnesses were permitted to testify, using testimony in substance recited heretofore. And testimony of the defendant's acts, manner and conduct was received by the court and upon its face was apparently sufficient to cause deep concern by members of the jury. Whether their testimony as to the defendant's mental capacity was weak or strong, sufficient or insufficient, to show unsoundness of mind were questions for the jury to decide, and in such case, though testimony of claimed mental disorder should be carefully scrutinized and weighed, the province of estimating the weight of said testimony belonged exclusively to the jury, rather than the trial court. And, from reviewing the record, this court finds that the trial judge failed to give an instruction on defendant's theory of insanity as a defense. Though this question was not raised in the brief of the plaintiff in error, this court cannot ignore the inevitable effect of his failure to do so. This court in numerous decisions has consistently held that in all criminal prosecutions, the defendant is entitled to have his theory of the case presented to the jury under proper instructions. In the case at bar, this question was not called to the attention of the trial court by the attorneys for the defendant, and said attorneys did no request such an instruction. However, it is of such fundamental nature that it was the duty of the trial court to submit such an instruction, whether requested or not. This court has held:

"Where there is evidence to support defendant's theory of a particular defense, courts should give an affirmative instruction covering such defense."

France v. State, 95 Okl.Cr. 244, 244 P.2d 341; Cawley v. State, 96 Okl.Cr. 53, 248 P.2d 273.

■ To have failed to give such an instruction in the case at bar was to the same effect as if a demurrer had been sustained to the testimony of defendant's witnesses. The defendant did not testify and relied solely upon the defense of insanity. The entire testimony of the defense was presented to support this theory. When the theory of insanity was removed from the consideration of the jury, it left the defendant without any defense whatsoever. In absence of such an instruction in the instant case, we could not justify ourselves in saying that defendant was afforded a fair and impartial trial as is provided under the Constitution. We are not at liberty to speculate as to what the jury would have done, had such an instruction been given. They may have readily concluded that the testimony to support the defense of insanity was insufficient to relieve defendant of responsibility for his actions. However, from the record we cannot but believe otherwise. It is shown by the record that the jury, after deliberating for some time, requested information from the trial judge, and after being called into open court, asked if they could find the defendant guilty and send him to a hospital, instead of to the penitentiary at McAlester. The trial court thereupon advised them that he had withdrawn from their deliberations the question of insanity and consequently they could not, and any verdict of

guilty would necessitate imprisonment. They then retired, found defendant guilty, and left the punishment up to the trial judge. We must say, in this connection, had the trial judge given proper instructions on defendant's theory of insanity as a defense, and the jury had found defendant not guilty by reason of insanity, that in compliance with the Oklahoma Statute, 22 O.S.1951 § 1161, they could have stated in their verdict that they "deemed the discharge of the defendant dangerous to the public peace and safety", and he would not have been released, but committed by the court to one of our State mental hospitals for the insane and held there until legally discharged. This would have apparently permitted the jury to render a verdict in conformity with their desires as reflected by their inquiry of the trial court.

It is therefore the opinion of this court that it was fundamental error for the court not to give an instruction upon defendant's theory of insanity as a defense, and the judgment and sentence of the district court of Oklahoma County is vacated, the conviction is reversed, and the cause is remanded with instructions to grant the defendant a new trial.

BRETT, P. J., and POWELL, J., concur.