West Alexander Borough Annexation Case.

Argued April 28, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Sanford S. Finder,* with him *George Anthou,* for appellant.

*Frank C. Carroll,* with him *Alexander McIlvaine,* for appellees.

OPINION BY MR. JUSTICE NIX, March 16, 1973:

This proceeding arises from the refusal of the Court of Common Pleas of Washington County to approve the

annexation of a portion of Donegal Township to the Borough of West Alexander.

In August 1967, appellant, Borough of West Alexander, filed a petition pursuant to the Act of July 20, 1953, P. L. 550, §1, 53 P.S. 67501,[1] seeking annexation of a portion of Donegal Township, a second class township, to the Borough of West Alexander. In September 1967, the Board of Supervisors of Donegal Township filed a complaint to the said petition alleging, *inter alia,* that a majority of the freeholders in the territory to be annexed were opposed.[2] A complaint was also filed by individuals residing in the territory to be annexed alleging that a majority had not signed the Borough's petition and that the descriptions in the papers filed were not accurate enough to determine who will, or might be, affected by the proposed annexation. At the same time, individuals alleging to be a majority of freeholders in interest in Donegal Township filed a petition asking for annexation. Following a hearing on the proposed annexation, the court below found that the proceedings were legally sufficient and appointed a board of commissioners to act under the Act of July 20, 1953, P. L. 550, §3, 53 P.S. §67503. The commission was specifically directed to determine whether a majority of the freeholders signed the petition.[3]

---

[1] These proceedings were conducted pursuant to the annexation provisions of The Second Class Township Code, Act of July 20, 1953, P. L. 550, §1, 53 P.S. §67501, rather than the similar provisions of The Borough Code, Act of February 1, 1966, P. L. (1965) 1656, §426, 53 P.S. §45426.

[2] Section 1 of the Act of July 20, 1953, P. L. 550, 53 P.S. §67501, provides in pertinent part: "Whenever the annexation of territory in a second class township to a borough, city or township is desired, a majority of the freeholders in the proposed annexed territory shall petition the borough, city or township requesting the annexation."

[3] In its Order of May 14, 1968, the court noted that ordinarily it should determine whether a majority of freeholders had signed

After conducting hearings the commission filed its report and stated that it was "unable to arrive at an affirmative conclusion, from the voluminous and often confusing evidence we have heard and seen, that 51 per cent or more of the freeholders in the territory proposed to be annexed have signed the petition for annexation." Proponents filed exceptions to the report which were dismissed. An opportunity to amend the petition was exercised, but this attempt was also dismissed and the court below entered an opinion and order dismissing the petition for annexation. The Superior Court[4] affirmed the dismissal and this appeal followed.

The sole issue raised by the appellant, Borough of West Alexander, is that it was denied a full and fair hearing before the board of commissioners. Specifically, appellant alleges that it did not have an opportunity to present its rebuttal evidence since on October 25, 1968, the commission, instead of conducting a scheduled hearing concluded without further testimony. A review of the record[5] supports appellant's claim.

the petition prior to the appointment of the commission. However, due to the contradictory descriptions of the area to be annexed, the court found it necessary to delegate this responsibility to the commission.

[4] Under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. IV, §402, 17 P.S. §211.402 (Supp. 1972-73), appeal is now to the Commonwealth Court. However, this appeal was filed in Superior Court prior to September 11, 1970, the effective date of the Appellate Court Jurisdiction Act of 1970. 17 P.S. §211.510 (Supp. 1972-73).

[5] In *Millersville Annexation Case*, 447 Pa. 310, 318 n.1, 290 A. 2d 102, 106 n.1 (1972), a majority of this Court stated: "Our decision herein, that Art. V., Sec. 9 of the new Constitution assures broad appellate review from the determination of an annexation case by a common pleas court, means that the difference between the scope of review under The Borough Code and under the Second

Our reading of the record reveals the following pertinent facts: On October 18, 1968, the commission was hearing evidence as to whether or not the signatures on the petition were valid and it was trying to determine whether certain individuals lived within the area to be annexed. At that time, both sides offered into evidence the maps and deeds which they believed adequately described the area and the chairman of the commission indicated on the record that further testimony on this point was not necessary. The following colloquy took place: "Mr. ANTHOU [Representative for the Borough of West Alexander] : Do you feel that there is any reason to go on with the description of—Mr. PORTER [Chairman of the Board of Commissioners]: No, because I got a good picture from Mr. Petros of the method he used and I take it he would go on around and show us that he did the same thing the rest of the way around the perimeter and I think he did an excellent job. I don't know what Mr. Petros' profession is, but if he is not a surveyor or a lawyer, it's even more to his credit. Mr. ANTHOU: One thing that has been a point of contention between both parties is the fact that the line does not meet in the end, do you want any evidence on that? Mr. PORTER: The extent to which it doesn't close seems to me to be no worse than anybody would get from working with old deeds and old farm maps and old surveys. Even the survey of a single farm often won't close, as we all know. I'm not much disturbed about that because it's only one or two prop-

Class Township Code, a difference which concerned the dissenters in Jenner Twp., no longer exists."

Even accepting the minority view that our review is on narrow certiorari, we would still be obligated to consider a claim alleging a denial of due process. *See, e.g., Absentee Ballots Case*, 423 Pa. 504, 509, 224 A. 2d 197, 199 (1966) ; *Deal v. Philadelphia Civil Service Commission*, 405 Pa. 136, 138, 173 A. 2d 323, 324 (1961).

erties possibly at the corner where it doesn't close that would be a problem. MR. CARROLL [Representative for Opposed Individuals] : I would disagree with that. One of our basic points in our position is by virtue of the inaccurate description, we're unable to determine who is within and who is without. Therefore, the difficulty has arisen as to who you count, how you count them and so forth. We're just unable to—It seems to me that it is a very important position. If we do not know what is to be annexed, how can we tell if there is a majority. That is the first question which the Court requested the Commission to examine into. The Court is to determine, as I understand it, in its initial hearing whether or not there are a majority of the people. MR. ANTHOU : I take it, Mr. Porter, that we should not get into the merits of the annexation until we have the preliminary question—MR. PORTER : I'll do whatever you say. It's past 4:00 o'clock. I've got an idea we'll need another couple of hours on that. I don't want to work to 6:00 o'clock on Friday afternoon. I don't want to work until 4:00 o'clock on Friday afternoon. I don't want to have another hearing, but I don't see much escape from it. MR. ANTHOU : I think we have done enough today. MR. PORTER : Recessed until Friday, October 25, 1:30 o'clock P.M., we hope and trust in this Court Room, if it's available."

Despite this clear indication that a further hearing was to be held, that the commission was satisfied with the description of the area to be annexed and that Mr. Petros, who prepared the map submitted by the appellant, had done an excellent job, the commission concluded the hearings and used the lack of an accurate survey as a basis for finding appellant's petition "ill-conceived and haphazardly executed". In its report the commission specifically stated that it could not determine whether 51 per cent of the freeholders had signed

the petition for annexation because "it is impossible to tell with certainty how many freeholders are in the area, since the description [contained in the petition] does not enclose any 'area'." In effect, even though the commission obviously changed its position as to the adequacy of the description, no opportunity to offer further testimony was afforded to the proponents. To the contrary, the hearings were concluded on October 25, 1968, notwithstanding the fact that another hearing was scheduled.[6]

At best, this entire proceeding was conducted in a confusing and unprofessional manner and we are reluctant to perpetuate this confusion. Nevertheless, we are compelled to remand this matter to the court below since we agree with appellant that the commission violated one of the fundamental precepts of due process when it prevented the appellant from presenting its rebuttal evidence.[7]

We had occasion to analyze section 4 of the Act of July 20, 1953, P. L. 550, 53 P. L. §67504, entitled "Hearing and findings by board of commissioners", in *Palmer Township Annexation Case,* 416 Pa. 163, 204 A. 2d 760 (1964). There we stated that "[o]bviously the purpose of this additional proceeding is to adduce *all of the*

---

[6] Counsel for appellant did put on record an offer of proof with respect to various properties that were in question and alleged that he was prepared to answer any objections the commission might have.

[7] We emphasize that our decision herein is based solely upon the fact that the appellant was not afforded a full and fair hearing. We are not impressed by appellant's argument that it was "lulled into a false sense of security" by the commission's statement that it was satisfied by the description of the area to be annexed. It is incumbent upon the proponents to know what constitutes a legally sufficient description of the area to be annexed. However, we cannot tolerate a situation where the proponents are specifically informed that they will be afforded an opportunity to be heard but then are subsequently denied this right.

*necessary information* to assist the court in making a final decision as to whether the annexation is in the public interest." 416 Pa. at 178, 204 A. 2d at 768 (emphasis added). Although we went on to note that this proceeding before the commission "is not a hearing in the sense that exceptions are to be filed by the parties or that either party takes on a burden of proof", 416 Pa. at 178, 204 A. 2d at 768, this certainly does not mean that the ordinary rules of fairness and due process do not apply. A "hearing", if it means anything, contemplates a fair and impartial proceeding at which competent and relevant evidence may be presented. The nature of a hearing was discussed in a similar context in *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A. 2d 104 (1954), and it was noted that "[i]n law, where a controversy is involved, a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially. Studying papers is not a hearing; passing on a report moving across one's desk is not a hearing. The very genius of American jurisprudence shines in the opportunity it affords every litigant to present his case openly, publicly and untrammedly." 377 Pa. at 11, 104 A. 2d at 106.

We therefore believe that appellant must at least be afforded a proper opportunity before the board of commissioners to present its evidence with respect to whether a sufficient number of freeholders had signed the petition for annexation. By mandating that this fair hearing be held, we are imposing upon the lower court those procedural requirements demanded by rudimentary due process. As the United States Supreme Court has noted: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimuum they re-

quire that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

Accordingly, the order of the Superior Court is reversed and the case remanded to the court below for proceedings consistent with this opinion.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.