Howard Lewis FRY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–357.

Court of Criminal Appeals of Oklahoma.

Dec. 12, 1974.

Thomas G. Hanlon, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James D. Bednar, Legal Intern., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Howard Lewis Fry, hereinafter referred to as defendant, was charged,

tried and convicted in the District Court, Nowata County in Case No. CRF–69–137, for the offense of Murder. He was sentenced to life imprisonment and from said judgment and sentence has made a timely appeal to this Court.

Briefly stated, the facts show that on October 26, 1969, the defendant allegedly shot and killed one Maynard "Rusty" Stanart in Nowata, Oklahoma. On motion of his attorneys, the defendant was committed to Eastern State Hospital in Vinita for mental observation on December 9, 1969 and was subsequently deemed by hospital psychiatrists as not being sane or able to participate in his own defense efforts at trial. On September 26, 1973, the court was notified by hospital officials that the defendant was deemed presently sane and now able to stand trial. Therefore, on December 3, 4 and 5, 1973, the defendant's trial was held.

At the trial Mrs. Juanita Moody, whose name, on October 26, 1969, was Juanita Hewitt, testified that on that date she resided at 428 S. Pecan in Nowata with her daughter and the deceased. After identifying the defendant at trial the witness told the jury that on October 26, 1969, in the early morning hours, the defendant tore her front screen door open, broke the front door glass and entered her home. At the time, her daughter was in the back of the house asleep and the deceased was in bed in the front bedroom located to the left of the front door. She said that as soon as the defendant entered the house he walked directly to the front bedroom, saying nothing and closing the door behind him. Mrs. Moody testified that she heard no conversation or noise of any kind, but that moments later the defendant emerged from the bedroom and told her "I killed Rusty." (Tr. 12) She said that she went into the bedroom to investigate and the defendant proceeded to use her telephone to call Mrs. Moody's mother, the now deceased Mrs. Lettie Riley. According to the witness the defendant told her mother that he had killed Rusty and that she (Mrs. Riley) should come and be with Juanita (Mrs.

Moody) saying "I don't want her by herself." (Tr. 13) After making the call the defendant left the house carrying with him what was described by the witness as a "long gun."

On cross-examination Mrs. Moody admitted that she and the deceased had been living together for over a year. She also testified that she had not seen the defendant for more than six months before the incident.

Next to testify was F. E. "Cotton" Snider, an investigator with the District Attorney's office in Nowata County. Mr. Snider said that he arrived at the scene at approximately 2:15 a. m. and he identified State's Exhibits No. 1 and No. 2 as photographs of the front door, depicting how it looked when he arrived. He also identified State's Exhibit No. 3, a picture of the deceased's body, which he took. Following his identification, the Exhibits were admitted into evidence.

Dr. John R. Reid, former medical examiner for Nowata County, testified that he received a call at 1:40 a. m. on October 26, 1969 regarding a fatal shooting and that when he arrived at the residence on Pecan he found the body of Maynard "Rusty" Stanart.

Ray Lambert, Firearms Examiner for the Oklahoma State Bureau of Investigation, testified that he examined one rifle slug from a shot shell and four shot shell wads submitted to him by F. E. Snider from the October 26, 1969 shooting. The witness identified the items marked as State's Exhibits Nos. 4 through 6 as a slug and wads from a .410 rifle shell. Following this testimony, the objects were admitted into evidence.

The State concluded its case with Dr. Jess Green, who on October 26, 1969, was the Deputy State Medical Examiner for Northeast Oklahoma. Dr. Green told the jury that on October 26, at approximately 11:15 a. m., he performed an autopsy on Maynard Lee "Rusty" Stanart and determined that his death was the result of a gunshot wound to the left chest. He iden-

tified Exhibit No. 4 as resembling the spent bullet he removed from the deceased and said that he had also removed several pieces of cotton wadding from the chest cavity.

Testifying for the defense, Rogers County Sheriff Amos Ward said that he first met the defendant in 1966 when called to the defendant's wife's home to quell a disturbance in which the defendant had allegedly been firing a gun into the ground and air around a group of children at a party. Charges were filed in the incident but later dismissed when the defendant entered the Veteran's Hospital for treatment. The Sheriff testified that he next saw the defendant in 1968 when he was being committed to Eastern State Hospital at Vinita.

Ava Powell, a semi-retired Associate District Judge of District 12 in Northeastern Oklahoma, testified that it was he who committed the defendant to the Vinita hospital in 1968 following a complete sanity hearing conducted by two doctors and a lawyer. The judge testified that at the time there was no question in his mind that the defendant was mentally disturbed and should be committed. Judge Powell testified that some time after this hearing he received a threatening telephone call from the defendant who was at that time undergoing treatment in the Veteran's Hospital in Topeka. The judge further testified that he was notified on the night of the Nowata shooting that the defendant had shot a man in Nowata and was reportedly coming to "get" him. He added that the defendant was apprehended a few hours later, however.

John Carle, an attorney from Claremore, testified that he had known the defendant since 1966 when he represented the defendant's late wife in their divorce and that during that time period the defendant had threatened his life. He said that he had also represented the opposing party in a child custody suit involving the defendant's son, and that as a result of the defendant's behavior he had bought a gun to protect himself. Mr. Carle also told the jury that

to his knowledge from 1967 to 1969 the defendant was from time to time committed to either the State Hospital at Vinita or a Veteran's Hospital.

The final witness at the trial was Dr. R. D. Garcia, a forensic psychiatrist at Eastern State Hospital, who testified that he first spoke with the defendant in October, 1972 and later performed the psychiatric examination on him on September 25, 1973, at which time it was found that he was presently sane and, also at which time, the defendant denied any involvement in the Nowata shooting.

Dr. Garcia testified that his diagnostic impression of the defendant was that of schizophrenia and that during the active processes of the problem the schizophrenic person would be incapable of distinguishing right from wrong. He further testified that since the defendant had been hospitalized he had shown remarkable improvement, a remission of the mental condition, but that it could relapse at any time. He also pointed out that the defendant had been hospitalized for three years and ten months.

At that time defendant's Exhibit No. 1, a letter from the late Dr. Peterson of Eastern State Hospital, who had first examined the defendant when he was admitted in 1969, was introduced. In that letter the defendant was termed psychotic and unable to distinguish right from wrong. Dr. Garcia also testified that:

"A. Based on the history that an active psychotic process is going on, so it's a definite certainty then that the patient cannot distinguish right from wrong.

"Q. In October, 1969?

"A. Well, even in October, 1969." (Tr. 128)

On redirect examination the witness explained that although the defendant had been admitted and discharged several times from the Vinita Hospital between 1966 and 1969, he had never been discharged to the public, but rather to a Veteran's Hospital for further treatment and that when the

defendant was readmitted on December 9, 1969, he was determined insane.

This testimony concluded the evidence adduced at trial with the defendant not testifying in his own behalf.

In his first proposition of error, the defendant contends that the trial court erred in overruling his motion to dismiss.

The defendant presents four arguments in support of this contention, among them that he was inadequately represented by counsel during confinement in Eastern State Hospital and that he was denied the right to call witnesses because Dr. Peterson had died while the defendant was in the hospital. We would note, however, that the defendant fails to cite any authority to support these contentions and, therefore, has waived their consideration on appeal. See Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969). In the same proposition the defendant alleges in two counts that he was denied his constitutionally guaranteed right to a speedy trial because he was in Eastern State Hospital for almost four years after the time he was charged before he was subsequently brought to trial. This question was dealt with similarly in Davis v. State, Okl.Cr., 300 P.2d 1000 (1956) in a case where the defendant, deemed incapable of assisting counsel in his own trial, was committed to a mental institution for over two years before he was found sane and brought to trial. In that case this Court held that in a criminal prosecution, where the question of the sanity of the defendant is submitted to the jury and the defendant is found presently insane and is confined to the state hospital for observation and treatment, such fact does not deprive defendant of his right to a speedy trial as guaranteed by the constitution. The defendant in this contention has relied on Jackson v. Indiana, 406 U.S. 715, 92 S. Ct. 1845, 32 L.Ed.2d 435 (1972), holding that Indiana's indefinite commitment of a criminal defendant solely on account of his lack of capacity to stand trial violates due process. We fail to see any analogy between that case and the instant case in view of the facts in the Indiana case that the defendant was a feeble-minded deaf-mute, unable to communicate with anyone and who was sentenced to an indefinite term in a mental hospital without the criminal charges having ever been adjudicated. Clearly, the facts in the instant case are quite different.

We would lastly note that a speedy trial is not governed only by the lapse of time, but by the circumstances bringing about the time lapse. See Hampton v. State of Oklahoma, 267 F.Supp. 667 (W.D.Okl.1967). The instant case was conducted in accordance with the statutory requirements that a criminal defendant found incapable of assisting in his own defense be committed to a mental institution until deemed presently sane at which time he is to be returned to the jurisdiction of the court to stand trial. Accordingly, we find no denial of a speedy trial to the defendant because of the time lapse and no error in overruling the motion to dismiss.

In the second proposition of error the defendant argues that the exclusion of hospital records from Eastern State Hospital was error and is grounds for reversal. The transcript reveals that the records offered in evidence and refused dated back to 1966 when the defendant was first admitted to the hospital. However, the doctor who examined him and on whose opinion the records were primarily based, had died before the defendant came to trial.

The Court of Criminal Appeals dealt with a similar problem in Bennett v. State, Okl.Cr., 448 P.2d 253 (1968), a case in which the defendant's mental records from the Veteran's Hospital were offered into evidence by the registrar who kept records because the doctor who had examined the defendant was no longer in the country. In upholding the exclusion of those records this Court said:

"To summarize our holding in the instant case, we are of the opinion that the hearsay written opinion of a psychiatrist, or physician is not admissible under ei-

ther the provisions of 12 O.S. § 499, or 12 O.S. § 501, supra, merely because it has been properly authenticated under the provisions of those statutes, when the psychiatrist or physician is not present in court and subject to cross-examination by the adverse party. In order to be admitted into evidence under the provisions of 12 O.S. § 499 and 12 O.S. § 501, the authenticated public records must otherwise be admissible and hearsay statements as to opinions are not rendered admissible where the declarant is not present in court and the opposing party has no opportunity to cross-examine."

Accordingly, we cannot find defendant's contention valid.

In his next proposition of error the defendant alleges that the trial court erred in not allowing lay witnesses to give their opinion of the sanity of the defendant. In particular, objections were sustained to questions asking the opinions of witnesses John Carle and Amos Ward. (Tr. 100, 74)

We would agree with defendant's contention that lay witnesses should be allowed to testify in regard to their opinions of the sanity of the defendant. Authority for this is found in High v. State, Okl.Cr., 401 P.2d 189 (1965) holding that:

"In Oklahoma a nonexpert witness may give his opinion as to whether or not a man is insane where it is shown that such witness has had sufficient opportunity for observation of the accused."

See also Holt v. State, 84 Okl.Cr. 283, 181 P.2d 573 (1947). However, even though the witnesses should have been allowed to give their opinions in response to questions by the defense, we fail to find where the exclusion of one response in light of the extensive other testimony given regarding the behavior and mental history of the defendant was either prejudicial to the defendant or would have had any bearing on the verdict rendered. One need merely review the testimony received to realize that the issue of the defendant's sanity, or lack of it, and the opinions of the witnesses

were clearly before the jury. In Garcia v. State, Okl.Cr., 501 P.2d 1128 (1972), this Court cited with approval the following language from Rogers v. State, 9 Okl.Cr. 277, 131 P. 941 (1913):

"'The admission or exclusion of testimony which, in the light of subsequent developments during the trial, indicates conclusively that no injury did or could have resulted is not ground for reversal of a judgment.'"

Therefore, whatever error there was in excluding the opinion responses ae to whether the defendant was mentally ill was more than compensated in light of the totality of the testimony of the witnesses and their testimony would at most have been cumulative and, accordingly, we find no reversible error in this proposition.

Finally, in his last contention the defendant alleges that reversible error occurred in the closing argument when the prosecutor referred to a letter in the State Hospital records, which had been excluded by the court, waving the same in front of the jury. The defendant asserts that this action left the inference with the jury that the defense had purposefully withheld the contents of the letter.

We fail to agree with this assertion and do not find that the defendant's right to a fair trial was abridged by this conduct. This Court has held repeatedly, as it did in Battle v. State, Okl.Cr., 478 P.2d 1005 (1970), and quoting from the first paragraph of the syllabus that:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. It is only when argument by counsel of the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

Further, in Jones v. State, Okl.Cr., 453 P. 2d 393 (1969), this Court quoting from Crowell v. State, 42 Okl.Cr. 392, 276 P. 518 (1929) stated:

" 'A conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct,. but that such misconduct might, in some degree, have influenced the verdict against the defendant.' "

We did not find that the waving of the letter was of such magnitude as to have prejudiced the jury or influenced their verdict and accordingly we find this contention to be without merit.

Therefore, in view of the evidence presented on which the verdict could have been rendered and in absence of any reversible error by the court, the judgment and sentence appealed from are hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.