**David Lee DOYLE, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–86–356.**

Court of Criminal Appeals of Oklahoma.

Dec. 26, 1989.

318

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., and Sandra, D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge:

Appellant David Lee Doyle was tried by jury and convicted in the District Court of

Cleveland County, Case No. CRF–85–423, of Robbery with a Dangerous Weapon (21 O.S.1981, § 791), Two Counts of Kidnapping (21 O.S.1981, § 741), and Four Counts of Forcible Sodomy (21 O.S.1981, § 888), and in Case No. CRF–85–420 of Three Counts of First Degree Rape (21 O.S.1981, § 1114). The jury recommended as punishment twenty (20) years imprisonment for Robbery with a Dangerous Weapon, fifty (50) years imprisonment for one count of Kidnapping, thirty (30) years imprisonment for one count of Kidnapping, one hundred (100) years imprisonment for each count of Forcible Sodomy, and one hundred and twenty five (125) years imprisonment for each count of First Degree Rape. The trial court sentenced accordingly. From this judgment and sentence, Appellant appeals. We affirm.

On April 20, 1985, C.P., a high school senior from Tulsa, and her sister were in Norman, Oklahoma for a college fraternity party. There she met R.S., a young man she knew from high school. At approximately 2:00 a.m. on the 21st, they left the party with R.S. walking C.P. to the place where she was staying the weekend. As they neared the area known as Campus Corner the Appellant approached them and attempted to pick a fight with R.S. When R.S. refused to fight, Appellant placed himself in between C.P. and R.S., put his arms around them and accompanied them down the street. As C.P. and R.S. attempted to get away, Appellant tightened his grip. Appellant, armed with a knife, forced R.S. and C.P. to walk a flight of stairs to a nearby garage apartment. As soon as all three were inside the apartment, Appellant locked the four locks on the door. Appellant ordered his victims into the bathroom and forced them at knifepoint to remove all their clothes and jewelry. R.S. was forced into the bathtub and C.P. was ordered to tie his hands behind him with black electrical tape. Not satisfied with the way C.P. performed the task, Appellant hit her in the face with the back of his hand. Appellant then finished tying R.S.'s hands and feet with the tape, and placed the tape over R.S.'s mouth. R.S. was forced into a closet which was then locked.

Holding the knife to her back, Appellant directed C.P. into the front room. Pushing her down on the bed, Appellant attempted to rape her. Unable to achieve full penetration, Appellant jerked her from the bed and forced her to sit in a bathtub of hot water. C.P. attempted to grab the knife from Appellant but he closed his fist and struck her in the face. He then tied her hands behind her back and taped her mouth with the black electrical tape. C.P. was forced back to the bed in the front room where the Appellant completed the rape. During this time Appellant asked C.P. numerous questions. When she did not answer to his satisfaction, he would hit her in the face so that her nose began to bleed profusely. Convincing Appellant that she was unable to breath with the tape and blood covering her face, he put the knife to her face and cut the tape at her mouth. Appellant then forced her to orally sodomize him. Unsatisfied with her performance and bloody appearance, Appellant allowed C.P. to wash the blood from her face and hair. After washing her face, Appellant forced C.P. back to the bed where he made her get on her hands and knees before committing the second rape. Unable to understand why C.P. was resisting him, Appellant laid down, held the knife to C.P.'s arm and forced her to lay on top of him. After this third rape of C.P., Appellant forced her to again orally sodomize him. Appellant repeatedly told C.P. that if she did anything to him, he would kill her. Appellant pushed C.P. back against a wall and told her that one of them had to die and which did she want it to be, her or R.S.

Appellant proceeded to open the door to the closet where R.S. had been detained and kicked him and hit him across the face before pulling him out of the closet. Removing the tape from his mouth, Appellant forced R.S. to orally sodomize him. Appellant then forced both C.P. and R.S. to lie in the bathtub and engage in oral sodomy. Pulling them out of the tub, the Appellant pointed the knife at them, and repeatedly told them that one of them had to die. As the Appellant was about to plunge the knife into the chest of R.S., C.P. got the

Appellant's attention by shouting at him. Throughout the ordeal, Appellant questioned C.P. about her personal life. These questions evolved into statements by Appellant that he and C.P. were husband and wife and that they would always be together. C.P. eventually decided to play along with Appellant and told him that she was his wife and that R.S. had merely given her a ride home. This satisfied Appellant so that he allowed R.S. to get dressed. With orders not to call the police, R.S. was allowed to leave.

As R.S. left the apartment, Appellant told C.P. that he did not trust R.S. because he would probably call the police, so they needed to go somewhere else. Allowing C.P. to get dressed, Appellant accompanied her down the street making periodic threats on her life if she tried to get away. Walking across the street through a church parking lot, Appellant forced C.P. into a wooden shed. Once inside Appellant spotted a can of red spray paint. Forcing C.P. to turn around and pull down her pants, Appellant sprayed the red paint over her back and up and down her legs. Directing her to turn around and pull up her shirt, Appellant continued to spray the red paint on her chest and the front of her legs. When C.P. asked Appellant why he was doing this, he responded that he wanted to see what she would "look like all cut up and bloody and pieces."

Finished with the red paint, C.P. was again compelled at knifepoint to orally sodomize Appellant. As Appellant threatened to rape her a fourth time, C.P. convinced him to let her remove the pants that were down at her ankles. As she removed the pants she kicked Appellant with her right foot and attempted to run out of the shed. Appellant grabbed her left foot but she was able to jerk it away and run down the street. She ran to the first house she saw and was let in to call the police.

At trial, Appellant's sole defense was that of insanity at the time of the offense. John Torro, a certified drug and alcohol counselor, testified that he had worked with the Appellant from January 1982 until July 1982. He stated that Appellant suf-

fered from moderate to severe alcohol and multiple chemical addiction and that individuals with that level of addiction were prone to experience blackouts. Dan Corley, a psychologist with the Department of Corrections, testified that he treated Appellant while he was on work release and that Appellant suffered from an unsocial personality disorder. Phillip Short, a psychiatrist, testified that he met with Appellant in the Cleveland County Detention Center in August 1985. During a two hour interview the Appellant described his history of alcohol abuse, an incident in which he was molested, and gave his version of the facts surrounding these charges. Dr. Short testified that he concluded Appellant was not psychotic but was probably highly intoxicated at the time of the commission of the offense. In rebuttal, the State presented Dr. R.D. Garcia, a forensic psychiatrist who performed the court ordered examination of Appellant at Eastern State Hospital. He testified that his tests revealed no long term chronic alcohol problem by Appellant and stated that it would be physically impossible for an individual to have committed the alleged offenses during an alcoholic blackout.

█ In his first assignment of error, Appellant alleges the trial court erred in permitting him to be tried as a habitual offender. The record reveals that Appellant was originally charged with Rape After Former Conviction of Two or More Felonies in CRF–85–420 and Robbery, Kidnapping (two counts), and Sodomy (two counts) After Former Conviction of Two or More Felonies in CRF–85–423. During the first stage of the preliminary hearing the State moved to amend the informations to allege two additional counts of sodomy in CRF–85–423 and two additional counts of first degree rape in CRF–85–420. The magistrate ordered Appellant bound over for trial on counts one through seven in CRF–85–423 and three counts of First Degree Rape in CRF–85–420 and granted the State twenty days to amend the informations to conform with the proof adduced at preliminary hearing. In the second stage, the State presented evidence of two prior felony convictions in the form of certified copies of

judgments and sentences. Over an objection by defense counsel, Appellant was then bound over for trial as a habitual offender. Two days later an amended first page felony information was filed in both CRF–85–420 and CRF–85–423. A second page was not filed with either amended information. At trial, the jury had retired for first stage deliberations when defense counsel objected to the bifurcated proceeding. The objection was overruled and the judge allowed Appellant to be tried as a habitual offender. The trial court found that the second page of the information was in the nature of a bill of particulars which the State intended to be attached to the first page but did not think it necessary to file a second time with the amended informations. Relying on *Carter v. State*, 292 P.2d 435 (Okl.Cr.1956), the trial court held that Appellant was informed of all charges against him and that the use of the prior convictions was no suprise.

In *Carter*, 292 P.2d at 440, this Court held that an accused is entitled to be informed in the preliminary complaint of all the charges he will be compelled to meet at the time of trial as well as the limit of the punishment that may be imposed. This rule was expanded upon in *Wimberly v. State*, 698 P.2d 27, 32 (Okl.Cr.1985), wherein we held that a defendant is entitled to proof of prior enhancing convictions at preliminary hearing. The purpose behind this doctrine is that the accused has the fundamental right to presume that he has been fully complained against in the preliminary hearing, and cannot lawfully be held to answer a greater charge entailing more severe penalties. *Price v. State*, 598 P.2d 668, 669 (Okl.Cr.1979).

In the present case, the felony informations were originally filed with the second page alleging the prior convictions. At the preliminary hearing proof was presented as to the prior convictions. Appellant was clearly bound over for trial on the prior convictions. The State's motion for leave to amend and the Court's subsequent granting of the request reflects an intent to amend the first page of the informations only so as to add specific counts. No indication is given that the State sought to abandon the second page allegations. See *Simmons v. State*, 549 P.2d 111 (Okl.Cr. 1976).

Appellant was properly tried as a habitual offender. While the better practice would be for the State to file the second page with the amended first page, even when the second page remains the same in substance, we find that Appellant in this case cannot claim he was surprised by the enhanced charges. Appellant received sufficient notice of the State's intent to enhance punishment with the prior convictions and was not prejudiced by their use. See *Tyler v. State*, 777 P.2d 1352, 1354 (Okl.Cr.1989). Accordingly, this assignment of error is denied.

██ Appellant argues next that the trial court erred in prohibiting his sister, Donna Ewers, from testifying to his psychological problems. In particular, an objection was sustained to a question asking if the witness had an opinion whether or not Appellant had any psychological problems. Appellant contends that such testimony was excluded in violation of 12 O.S. 1981, § 2701. Section 2701 of the Evidence Code allows the admission of an opinion by a lay witness if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of his testimony or the determination of a fact in issue. In *LacCoarce v. State*, 309 P.2d 1113, 1117 (Okl.Cr.1957), we reiterated the rule expressed in *Rice v. State*, 80 Okl.Cr. 277, 158 P.2d 912, 917 (1945), that where insanity is interposed as a defense, a non-expert witness, after testifying to the act, conduct and appearance of the defendant, may state whether such acts, conduct and appearance impressed him as being rational or irrational. However, a lay witness is not permitted to give an opinion calling for a medical diagnosis. We find that the trial court properly prohibited Mrs. Ewers from giving her opinion as to Appellant's psychological problems. The question put to the witness called for a medical diagnosis which Mrs. Ewers was unable to give. Appellant was not prejudiced by the Court's ruling, however, as Mrs. Ewers related sufficient facts upon which to give her opinion

that Appellant was rational or irrational or that he knew right from wrong. *See Yates v. State*, 703 P.2d 197, 199 (Okl.Cr.1985), *High v. State*, 401 P.2d 189, 195 (Okl.Cr. 1965). Mrs. Ewers testified that Appellant had lived with her family from January 1985 until April 1, 1985, approximately three weeks before the crimes, and that during that time he attended alcoholic anonymous meetings. Mrs. Ewers described Appellant's childhood as the third of four children and stated that he was emotionally and physically abused by their father. She further testified that their parents always described the Appellant as rotten and worthless and commented often that Appellant needed to see a psychiatrist because something was wrong with him. She stated that their father constantly told Appellant that he hated him and threatened to throw him down a mine shaft. The other siblings disliked Appellant and excluded him from their activities. Mrs. Ewers added that Appellant began abusing alcohol at a young age. She also testified that in her opinion Appellant was in need of mental and psychiatric treatment. The defense also presented a licensed drug and alcohol counselor, a psychologist for the Department of Corrections and a psychiatrist, all of whom testified to Appellant's addiction to alcohol, his anti-social personality and a history of blackouts. Therefore, any potential error in excluding Mrs. Ewers opinion on the Appellant's psychological problems was more than compensated by her testimony concerning his childhood and the testimony of the other witnesses concerning his mental capacity. See *Fry v. State*, 529 P.2d 521, 525 (Okl.Cr.1974). Accordingly, we find no reversible error in this proposition.

In his third assignment of error, Appellant alleges that he was subjected to multiple punishments for one continuing offense in violation of the Double Jeopardy Clause of both the federal and state constitutions. Urging this Court to apply the "same transaction test", Appellant argues that the kidnappings were merely movements incidental to the commission of the rape and sodomy and therefore should not be charged and punished as separate of-fenses. The State contends that under the "same evidence test" each act was properly prosecuted and punished as separate and distinct offenses.

The Double Jeopardy Clause of both federal and state constitutions protects against two (2) distinct abuses: 1) requiring the accused to endure a series of trials where the same offense is charged and 2) the infliction of multiple punishments for the same offense. *Ocampo v. State*, 778 P.2d 920, 923 (Okl.Cr.1989). Recognizing these two distinct functions, this Court has reserved the right to apply the test which will most advance the interests of justice in a particular case. *Salyer v. State*, 761 P.2d 890, 893 (Okl.Cr.1988).

In the present case we are concerned with the prohibition against multiple punishment, which we referred to in *Weatherly v. State*, 733 P.2d 1331, 1336 (Okl.Cr.1987), as "forbid[ding] [the] penalizing [of] an accused more severely than the law provides, through the device of finding that he has committed several violations of substantive law where only one exists." 733 P.2d at 1336. An act can violate more than one statute if each statute requires proof of an additional fact that the other does not, and multiple punishments are not prohibited, even though each offense may arise from the same act or criminal episode. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Therefore, we must first determine if the criminal episode involves separate and distinct offenses, consisting of different elements of dissimilar proof. The question to ask is "whether each of the offenses charged requires proof of an additional fact that is not necessary to the other." *Johnson v. State*, 611 P.2d 1137, 1140 (Okl Cr. 1980). If the elements of proof are different for each offense, or if the elements of the several offenses are identical but dissimilar proof is required to prove each offense, and if a significant gap exists between the individual attacks so that the criminal transaction may not be called uninterrupted or intermittent, then individual

crimes occurred. *Weatherly v. State*, 733 P.2d at 1338.

In the present case, the kidnapping, rape and sodomy are separate and distinct offenses, each requiring dissimilar proof of their several elements. Merely because the crimes were committed in rapid succession does not negate the fact that separate crimes were committed, so long as a separation does exist. *Id.* at 1338. The Double Jeopardy Clause is not carte blanche for an accused to commit as many offenses as desired within the same transaction or episode. *Hill v. State*, 511 P.2d 604, 606 (Okl.Cr.1973).

Further, we reject Appellant's argument that the kidnapping merged with the rape because the controlling crime of rape necessarily involves the forced detention of the victim. The information alleged that Appellant kidnapped the victim "with the unlawful and felonious intent ... to cause [the victim] to be secretly confined and imprisoned.... against her will." (O.R.B2). The intent of the kidnapping was not for the purpose of rape and a review of the facts shows that the rape was sufficiently separate from the kidnapping so that it was not an included element. See *Stockton v. State*, 509 P.2d 153, 155 (Okl.Cr.1973). The factual and legal elements of the three crimes differ so as to render prosecution and punishment for each offense proper even though they arose from the same incident. For this reason, Appellant was not twice placed in jeopardy nor punished twice for one offense. Accordingly this assignment of error is denied.

In his fourth assignment of error, Appellant contends that a Double Jeopardy violation also occured in his trial for three counts of rape and three counts of forcible sodomy. Appellant argues that since the acts occurred within a limited time span, he should have been tried for only one count of rape and one count of sodomy. This same issue was addressed in *Colbert v. State*, 714 P.2d 209, 211 (Okl.Cr.1986), wherein this Court held that a defendant could be convicted of two separate offenses of rape where every element of rape was

proven as to each count, even though the violations occurred within minutes of one another. In the present case the first rape occurred in a series of acts beginning with C.P. forced onto the bed in the front room of Appellant's apartment through being forced to sit in the bathtub of hot water and then forced back to the bed where Appellant completed the rape. Appellant subsequently hit C.P. in the face causing her nose to bleed profusely. Appellant then compeled C.P. to perform oral sodomy. Appellant committed the second rape while C.P. was on her hands and knees after washing the blood from her face and hair. The third rape occurred when the Appellant forced C.P. to sit on top of him. Appellant then forced C.P. to orally sodomize him a second time. The final sodomy occurred when Appellant and C.P. were in the garage after she had been sprayed with the red paint. We find that every element was proven as to each count of rape and sodomy. We are not persuaded by Appellant's argument that only one rape occurred since he did not believe the act had been properly consummated until the last act of intercourse. It would be utterly unreasonable to hold that an accused could repeatedly rape or sodomize a victim until he felt that he had completed the act to his own satisfaction. Accordingly, this assignment of error is denied.

In his fifth assignment of error, Appellant contends that his conviction must be reversed because the trial court failed to hold a post-examination competency hearing. The record reflects that on May 17, 1985, Appellant was ordered to Eastern State Hospital for psychiatric examination in order to determine his competency to stand trial. On June 18, 1985 all parties appeared in open court wherein the trial court initiated proceedings by reviewing the status of the case. The judge indicated receipt of a letter dated June 5, 1985, from Dr. Garcia, Chief Forensic Psychiatrist, Eastern State Hospital, and reported that Appellant had been found medically competent to stand trial. Defense counsel was then asked if he desired to make a record concerning Dr. Garcia's finding. Defense

counsel stated that he had no evidence to rebut or contradict the psychiatric evaluation. However he did not wish to waive his right to a jury trial as to competency or his right to seek the service of an independent psychiatrist if it became necessary at a later time. Defense counsel reiterated that he could not in good faith request either of those alternatives at that time as he had no evidence to rebut or contradict the findings of Dr. Garcia. (PH Tr. 4–5).

Title 22 O.S.1981, § 1175.1 *et seq.* sets forth the procedure to be followed when the defendant's competency to stand trial has been raised. Section 1175.4 provides for a post-examination competency hearing where the trial court is to determine by clear and convincing evidence if the defendant is incompetent. The right to this hearing cannot be reserved to a later time in the criminal proceeding because 22 O.S. Supp 1983, § 1175.2(C) requires the criminal proceedings must be suspended until the person's competency is determined. In *Scott v. State,* 730 P.2d 7, 8 (Okl.Cr.1986), this Court stated that the judgment of competency is to be made only after a formal hearing at which all relevant evidence is presented. But what actually constitutes a hearing in this context has not been addressed by this Court.

 A "hearing" is defined by Black's Law Dictionary as a "proceeding of relative formality ... with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have [a] right to be heard ...". Black's Law Dictionary 649 (5th Ed.1979). A "hearing" has also been described as a proceeding in which the parties are afforded an opportunity to adduce proof and to argue, in person or by counsel, as to the inferences flowing from the evidence. 39A C.J.S. Hearing 632 (1976). A review of decisions from federal and state courts wherein the procedure called a hearing is discussed reveals two basic criteria. These two basic components are the right for all parties to be apprised of all evidence offered or considered, with the opportunity to be heard, and the opportunity to present one's own contentions and to support the

same by proof and argument. *See,* e.g., *Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), *Akron, C. & Y. Ry. Co. v. United States,* 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605 (1923), *Siebold v. State,* 287 Ala. 549, 253 So.2d 302 (1971), *Board of Education of Cleveland City School District v. Cuyahoga County Board of Revision,* 34 Ohio St.2d 231, 298 N.E.2d 125 (1973), *Amerada Petroleum Corp. v. Hester,* 188 Okl. 394, 109 P.2d 820 (1941), *Appeal of the Borough of West Alexander,* 450 Pa. 453, 301 A.2d 662 (1973).

 A hearing for purposes of 22 O.S. 1981, § 1175.4 means a proceeding wherein the state and the defense are afforded an opportunity to present evidence concerning the defendant's competency and to argue as to inferences therefrom. This affords the defense the very basic tenet of our system of criminal justice, the opportunity to present evidence in one's own behalf. However, the exercise of that opportunity is a decision solely for the defense. The character of the proceeding is not altered by the decision not to present any evidence.

In the present case, both parties were afforded the opportunity to present evidence and argument. The record indicates that the defense knew of Dr. Garcia's finding of competency, yet chose not to present any evidence to contradict or rebut. Defense counsel did not request a continuance in order to present his evidence. The decision to present evidence regarding the present competency of the defendant must be made at the time of the hearing. It is not a matter which can be reserved. The statement of defense counsel in this case constitutes a waiver of the right to further hearing.

This opinion does not retreat from our statement in *Scott* that the competency determination should not be made on the basis of the examining doctor's opinion alone. The hearing judge is to consider all evidence presented at the hearing. However, if the defendant elects to waive the hearing and no evidence is presented by the defense, the hearing judge is to evaluate the doctor's report and make his own legal

determination. The trial judge cannot compel a party to put on evidence.

This interpretation of a post-examination competency hearing is consistent with that provided in 22 O.S.1981, § 1175.4(B) wherein the defendant is presumed to be competent and the defense is allocated the burden of proof and burden of going forward with the evidence. Accordingly, this assignment of error is denied.

■■■■■ In his sixth assignment of error, Appellant alleges that the information filed in CRF-85-420 was not sufficient to apprise him of the charges against him. He specifically complains that the three counts of rape are identical and that the information did not describe with particularity the various acts of rape committed upon C.P. Title 22 O.S.1981, § 402 provides that the information must be direct and certain as it regards the party charged; the offense charged; and the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. This Court has uniformly held that an information must apprise the defendant of what acts he or she must be prepared to meet in the prosecution of the case and to defend against any subsequent prosecution for the same offense. *Short v. State*, 634 P.2d 755, 757 (Okl.Cr. 1981). The true test of the sufficiency of the information is not whether it could have been made more certain, but whether the defendant was in fact misled by the information and whether it would expose the defendant to the possibility of subsequently being put in jeopardy a second time for the same offense. *Nealy v. State*, 636 P.2d 378, 380 (Okl.Cr.1981). The record in the present case reflects that Appellant was well aware of the specific nature of the charges against him. At preliminary hearing, the magistrate specifically enumerated which acts constituted each separate count of rape. In *Nealy* we stated that the test of the sufficiency of the information must be determined on the basis of practical rather than technical considerations; hairsplitting is to be avoided. *Id.* at 380.

Appellant relies on *City of Tulsa v. Haley*, 554 P.2d 102 (Okl.Cr.1976), and *Lamb v. State*, 626 P.2d 1355 (Okl.Cr.1981); however that reliance is misplaced as the present case is clearly distinguishable. In *Haley*, the information charged defendant with assault and battery but failed to state exactly how he struck his victim, whether he kicked, pushed or shoved him. In *Lamb*, the information charged defendant with kidnapping for purposes of extortion but failed to state what thing of value was extorted from the victim. In the present case, the information is in statutory language and specifically states how the act was committed. Any question as to exactly where in the house or at what point during the episode the rape was commited was explained at the preliminary hearing. Therefore, as the Appellant was adequately advised of the precise nature of the charges against him and was not placed in danger of further prosecution for the same acts, this assignment of error is denied.

■■■■ In his seventh assignment of error, Appellant contends that the trial court abused its discretion in running his sentences consecutively. Appellant argues that a "more just" sentence would be to run the sentences concurrently since the offenses were committed during a single episode. (Appellant's Brief page 18). Appellant compares his case with *Taylor v. State*, 490 P.2d 1404 (Okl.Cr.1971), wherein this Court found that the trial court abused its discretion in running the sentences consecutively and modified the sentences to run concurrently.

It is well established that the decision to run a defendant's sentences concurrently or consecutively rests within the sound discretion of the trial court. *Sherrick v. State*, 725 P.2d 1278, 1284 (Okl.Cr.1986). We do not find an abuse of that discretion in the present case. Each offense committed consisted of separate and distinct elements, none of which merged into proof of any of the others. See *King v. State*, 640 P.2d 983, 985 (Okl.Cr.1982). Further, the present case is clearly distinguishable from *Taylor* wherein the defendant was convicted and sentenced for the burglary of six (6) parking meters for $3.73. This Court held

that punishment totaling ninety (90) years imprisonment was excessive considering the crime committed and the jury recommendation that the sentences be served concurrently. In the present case, the crimes committed by the Appellant are not only more egregious than those in *Taylor*, but we also have no jury recommendation for leniency. Finding no abuse of the trial court's decision, this assignment of error is denied.

■■■■ During the penalty phase of trial, Appellant's punishment was enhanced with a judgment and sentence on a guilty plea for First Degree Rape from Murray County. Appellant objected at trial and argues now in his final assignment of error that the enhancement was improper as a violation of double jeopardy pursuant to this Court's decision in *Doyle v. State*, 578 P.2d 366 (Okl.Cr.1978). In *Doyle* Appellant's 1977 conviction for kidnapping for purposes of extortion was affirmed. In that case Appellant kidnapped a young lady in Norman, drove her to Turner Falls where the victim was raped, and eventually let the victim go free in Dallas, Texas. During the kidnapping trial in Cleveland County, the court admitted evidence of the rape as other crimes evidence. That decision was affirmed by this Court. In his special concurring opinion, Judge Brett stated that as the evidence of the rape had been treated as being a part of the res gestae of the kidnapping, a subsequent trial for that offense should be precluded by former jeopardy. 578 P.2d at 370. However a review of the judgment and sentence for the rape charge shows that Appellant pled guilty in Murray County May 20, 1977, approximately four days after being convicted in Cleveland County, and approximately one year prior to this Court's decision in *Doyle*. We find Appellant's argument lacks merit.

Title 22 O.S.1981, Ch. 18, App., Rule 4.1 provides that an appeal may be perfected from any conviction on a plea of guilty by filing an application to withdraw the plea within (10) ten days from the date of pronouncment of the judgment and sentence. Nothing in the record indicates that the conviction was appealed. A determination that the prior conviction was unconstitutionally obtained has never been made and this is not the proper place for the Appellant to collaterally attack that conviction. Therefore, no error occurred when the State used that conviction for enhancement purposes. See *Parks v. State*, 651 P.2d 686, 692 (Okl.Cr.1982), *Ashlock v. State*, 643 P.2d 324, 325 (Okl.Cr.1982). This assignment of error is therefore denied.

Accordingly, the judgment and sentence is AFFIRMED.

LANE, BRETT and JOHNSON, JJ., concur.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

I strongly dissent to the majority's disposition of appellant's fifth assignment of error. Therein, appellant asserts that his conviction must be reversed because the trial court failed to conduct a post-examination competency hearing. I agree.[1]

To characterize the meager colloquy between defense counsel and the trial court on the day of preliminary hearing as an appropriate "hearing" for purposes of 22 O.S.1981, § 1175.1 et seq., which the majority so does, is simply ludicrous. A review of the record clearly indicates that, on the date set for preliminary hearing, defense counsel appeared in court prepared to defend his client against the present charges at a preliminary hearing. The trial court then essentially ambushed appellant by reading into evidence Dr. Garcia's findings and requesting rebuttal from the defense. At that time, appellant's attorney candidly

---

1. This Court has previously remanded similar cases to the district court for the purpose of determining (1) whether or not it was then feasible to conduct an appropriate post-examination competency hearing; and if so, (2) whether the appellant was competent to stand trial when he so did. *See Anderson v. State*, 765 P.2d 1232 (Okl.Cr.1988). While it is my opinion that failure to hold a post-examination competency hearing prior to trial mandates reversal, *See Anderson*, 765 P.2d at 1234 (Parks, J., dissenting), I have yielded to the majority of this Court's disposition of like claims on the basis of *stare decisis*. The abovestated remedy is available to this Court, yet the majority chooses not to employ it. Therefore, I agree with appellant that this case should be reversed and remanded for a new trial.

informed the court that he was not then prepared to rebut or contradict the psychiatric evaluation. Such response was entirely justifiable in that, as previously stated, defense counsel appeared on the day in question to represent appellant at his preliminary hearing. He then stated that he did not wish to waive appellant's right to have a jury determine his competency to stand trial or his right to seek the service of an independent psychiatrist if it later became necessary to do so. The trial judge thereafter asked the prosecutor if he had any comment, he announced that he did not, and the preliminary hearing was begun. It should also be noted that no record was made with respect to the required findings of the court pursuant to §§ 1175.4(E) and 1175.5.

On the basis of the foregoing, I cannot agree that defense counsel was afforded the opportunity to present evidence and argument on behalf of appellant, that he chose not to present the same, or that his statements constituted a waiver of the right to further hearing. Accordingly, I would reverse and remand this cause to the district court and command that an appropriate hearing be conducted pursuant to § 1175.1, et seq., prior to the commencement of criminal proceedings.